## KITTREDGE *vs.* BELLOWS.

THE very essence of an attachment of real estate consists in leaving with the town clerk a copy of the writ and return of the attachment.

K, having sued out a writ against P, delivered it to H, a deputy sheriff, with directions to attach certain lands of P; and H went with the writ upon the land, in order to make the attachment. Afterwards W., with full notice of all this, having sued out a writ against P, caused a copy of his writ and a return of an attachment of the land, to be lodged with the clerk of the town where the land was. Subsequently to this, the officer who had K's writ caused a copy of it, with a copy of a return of an attachment of the land, to be left with the town clerk. It was *held*, that W's attachment must be considered as prior to that of K.

A creditor delivered his writ to a sheriff, with directions to attach certain real estate of his debtor which was under mortgage. The sheriff by his negligence suffered other creditors to obtain prior attachments of the right to redeem. It was *held*, that the sheriff was liable for such neglect, although the other creditors never levied their executions upon the right to redeem—it appearing that the right continued subject to their attachments, until it was foreclosed.

THIS was an action on the case.

The substance of the declaration was, that Heaton, the defendant's deputy, having, on the 27th January, 1825, attached a farm by virtue of a writ in favor of the plaintiff against Amos Phillips, neglected to leave a copy of the writ and return with the town clerk of Walpole, where the land attached was situate, until the 28th of January, 1825, at 8 o'clock in the evening, although specially requested to do so; by reason of which neglect several other creditors of Phillips, who attached the land after the said attachment of the plaintiff, having left copies of their writs and returns with the said town clerk previously to the time when the copy of the plaintiff's writ and return was left as aforesaid, the plaintiff lost his said attachment.

The cause was tried here October term, 1830, when it was agreed that a verdict should be entered for the plaintiff or defendant, according to the opinion of the court upon the following evidence.

On the 27th of January, 1825, the plaintiff sued out a writ against Phillips, as alleged in the declaration, and delivered it to Joseph Heaton, a deputy of the defendant, to be served.

Heaton, at the time of the delivery of the writ to him, was upon the farm in question, having there attached all the personal property of Phillips, to the amount of "$800 or so."

It did not appear what Heaton was to attach when the writ was delivered to him; but James Hooper testified that J. Kittredge, Jr., the agent of the plaintiff, who delivered the writ to Heaton, requested him to make out a copy and leave with the town clerk; to which Heaton replied, it was not necessary, as he was attaching only an equity of redemption; that the agent went away, and returned, saying to Heaton that he was instructed that it was necessary to leave a copy; to which Heaton replied that he would risk it.

The same witness testified that he thought Heaton said he had attached the farm on Kittredge's writ; but on his cross examination he said that nothing was said about attaching any thing but the equity, and that he did not hear Kittredge's directions. This was between 9 and 10 o'clock in the forenoon.

On this point, Ruggles Watkins testified that he went to Phillips about noon, and saw Heaton there, and inquired of Heaton if he had attached the real estate, who said he had. Witness asked if he had left copies. Heaton said he had not, and did not consider it necessary.

The witness, who was a deputy sheriff, immediately went to the town clerk's, and left copies of writs in favor of Thomas Seaver and J. Redington, then in his hands for service, and on which he had copies in readiness at the time he was at Phillips'.

The town clerk lived 2¼ to 2½ miles from Phillips. This witness further testified that he delivered to Bellows, the defendant, a writ in favor of himself about 11 o'clock, of

that day ; that he copied it himself, and delivered it to Bellows in the clerk's office, who was then completing his returns on writs in favor of Buffums ; and when those were finished defendant went and served witness' writ.

The witness further testified that at the time he received the writs in favor of D. Gilbert and Grant & Stone, he told Field, the attorney who made those writs, that Heaton had made some attachments and left no copies.

On the 28th January, 1825, at 8 o'clock, P. M., Heaton left with the town clerk a copy of Kittredge's writ and of his return, which was as follows, viz.

" CHESHIRE, Ss. JAN. 27, 1825.   I have attached a tract ' of land, situate in Walpole, and being the farm on which ' the within named Phillips now lives, meaning to include ' all the right he, the said Phillips, has or may have in the ' aforesaid premises, as the property of the within named ' Phillips, and left a summons at his usual place of abode in ' Walpole.   Also, left with Nicanor Townsley, clerk of said ' town of Walpole, a true and attested copy of this writ, ' with a true copy of this my return thereon endorsed."

It appeared that the following described writs against said Phillips were served on the 27th of January, by attaching " all the right which the within named Amos has to redeem ' in equity the farm on which the said Amos now lives, and ' all the right, title and interest which the said Amos has in ' said farm, bounded," &c., and copies of said writs and of the returns were left with the town clerk at the times specified below, to wit.

|  |  |  |  | H. M. |  |
|---|---|---|---|---|---|
| Bellows & Redington, | served by defendant. | | Copy left | 11 45, | A. M. |
| W. & D. Buffum, | " | " | " " | 11 50, | " |
| W. Buffum, | " | " | " " | 11 50, | " |
| R. Watkins, | " | " | " " | 2 15, | P. M. |
| T. Seaver, | " | Watkins, | " " | 3 15, | " |
| J. Redington, | " | " | " " | 5 20, | " |
| D. Gilbert, | " | " | " " | 7 30, | " |
| Grant & Stone, | " | " | " " | 8 o'clock. | |

It was conceded by the plaintiff that Heaton could not have left a copy of his writ until after those of Bellows &

Redington, W. & D. Buffum and W. Buffum were left.

It further appeared, that on the 29th January Watkins caused a further return to be made by the defendant on his writ, as follows, to wit.

"CHESHIRE, Ss. JANUARY 29th, 1825. I also attached, 'in addition to my former attachment, a certain piece of 'land, situate in said Walpole, as the property of the within 'named Phillips, containing about three acres, be the same 'more or less, and lying at the northwesterly corner of the 'farm owned by Jabez Fairbanks," &c.

The copy of this return was left with the town clerk on the 29th.

The piece mentioned in the above return contained about four and a half acres, and had for twenty-five years been enclosed and occupied as part of the farm of Phillips, there being no fence to separate it from the rest of the farm.

James Hooper also purchased a writ against Phillips, on the 27th, which was placed in the hands of Heaton, with directions to attach the farm, on which Heaton returned, January 27, 1825, that he had attached "the whole farm 'on which the said Phillips now lives, including the Salter 'Farm, so called, lying in Walpole, meaning all the right 'in equity of redemption and dower whenever he the said 'Phillips might be interested," &c. The copy of this writ and return was left with the town clerk at the same time with the copy of Kittredge's, to wit. on the 28th January, at 8 o'clock, P. M.

At May term, 1826, of this court, judgments were recovered on the aforesaid demands against Phillips, on default, as follows, viz.

| | | |
|---|---|---|
| Bellows & Redington, | damages, | $35,53. |
| | costs, | 13,33. |
| W. & D. Buffum, | damages, | 35,00. |
| | costs, | 10,99. |
| W. Buffum, | damages, | 85,80 |
| | costs, | 10,99 |
| R. Watkins, | damages | 95,87. |
| | costs, | 12,08. |

| | | | |
|---|---|---|---|
| T. Seaver, | damages, | 17,95. | |
| | costs, | 11,99. | |
| J. Redington, | damages, | 90,20. | |
| | costs, | 10,99. | |
| D. Gilbert, | damages, | 52,60. | |
| | costs, | 11,24. | |
| Grant & Stone, | damages, | 28,36. | |
| | costs, | 12,24. | |
| J. Kittredge, | damages, | 371,28. | |
| | costs, | 11,13. | |
| James Hooper, | damages, | 131,04. | |
| | costs, | 12,02. | |

Kittredge
*vs.*
Bellows.

Part of the plaintiff's demand was on account annexed to the writ.

Executions issued on part of the foregoing judgments May 10th, and on the rest May 17th, 1826.

On the 19th May, 1826, the plaintiff levied his execution on the whole farm, and it was set off to him by metes and bounds.

The return of the appraisers, after describing the land on both sides of the road, is as follows: "Do upon our oaths 'say that the same tracts of land and buildings is of the 'value of three thousand dollars and no more;—the afore-'said tracts of land subject to a mortgage to James Hooper 'and Elisha Hooper, supposed to be twenty-six hundred 'dollars; and we have set off the same land by metes and 'bounds as aforesaid, in satisfaction of the within execution, 'May 19th, 1826"—and the execution was returned satisfied in full.

On the 31st of May, 1826, Watkins levied his execution on the piece of four and a half acres, before mentioned, and it was set off to him the same day.

It further appeared in evidence, that on the 21st of May, 1818, Phillips conveyed to James Hooper and Elisha Hooper in mortgage, "a certain farm or tract of land, lying in Wal-'pole aforesaid, being the same farm I now improve and 'occupy, and being the same I purchased of David Adams

'on the 28th of September, 1799. Recorded lib. 34, folios ' 16 and 17. Also, another piece of land, containing eight ' acres, adjoining the above farm, being the same I purchas- ' ed of Hugh Dunshee, reference to his deed," &c. The condition of the mortgage was to " indemnify and save ' harmless the said James and Elisha from all costs, trouble ' and expense they may sustain on account of their signing ' with me as bondsmen to the judge of probate, on the 6th ' of May instant, on my taking a letter of guardianship for ' the heirs of Aaron Allen."

The four and a half acre piece was not purchased of Adams or Dunshee.

On the first of July, 1822, Phillips mortgaged the same land, by the same description, to Elisha Hooper, to indem- nify him for signing as surety to Phillips a note to Eleanor Livingston for $150 and interest, and a note to Jonathan Livingston for $200 and interest.

On the 27th of January, 1825, Elisha Hooper procured a suit to be instituted on the $200 note to Jonathan Livings- ton, and a piece of woodland to be attached, belonging to Phillips. Judgment was rendered in this suit May term, 1826, for $113,97 damages and $14,32 costs, and execution issued May 10, 1826, which was levied on said woodland May 24th, 1826, and returned satisfied.

In February, 1826, E. Hooper paid the note given to Eleanor Livingston for $150, and brought a writ of entry on his mortgage February 28th, 1825, against John Allen, who was then in possession of the farm under a lease from Phillips. This writ was returnable March term, 1825.

At March term Hooper agreed with Allen that if he would make no defence in that action he would rent him the farm for $65 ; and Allen was defaulted and a conditional judg- ment rendered at the same term for the amount of the Ele- anor Livingston note, being $185,02, and for $112,40, being part of the note of $200 to Jonathan Livingston, making in the whole the sum of $297,42 ; and in April or May, 1825, Hooper settled with Jonathan Livingston for the $200

note by giving his note for the full amount, and Livingston subsequently quitclaimed to Hooper the woodland which was set off on the execution recovered for the other part of the $200 note in May, 1826.

On the 18th of May, 1825, Hooper leased said farm to Allen till the 1st of April, 1826, for the sum of $65. Allen held the farm under Hooper until the expiration of that lease, and paid the rent to Hooper.

April 2d, 1826, Hooper leased the same to Allen and one William C. White for a year for $140; and they held and paid rent according to their lease.

Hooper kept this rent of $65 for the first term, and did not apply it on his mortgage.

On the 28th of May, 1825, Hooper took out a writ of possession on his judgment against Allen, and on the 30th of May, H. Foster, deputy sheriff, delivered possession to him. Hooper declared he took possession to foreclose his mortgage.

None of the executions were levied except Watkins' on the four and a half acre piece, and Kittredge's on the farm, as before stated.

In May, 1826, it was agreed between James and Elisha Hooper and the creditors who had attached, that the land should be sold; that the amount of the mortgages should be first paid from the sale; that James Hooper's debt against Phillips should also be paid from the amount of sale, and the balance, if any, should be applied on the debts of the several creditors, in the order of their attachments.

It did not appear distinctly whether Kittredge was a party to this agreement.

In consequence of this agreement, the land was put up at auction and sold to James Hooper for $3000, and on the first of June, 1826, Elisha Hooper quitclaimed to James Hooper.

James Hooper testified that there was due on the second mortgage $2061,69. He ascertained the amount by reference to the probate records. On the other, $321,53. That

these amounts, with his debt against Phillips of $144 and some cents, were deducted from the $3000, the amount of the sale, and the balance paid over to the creditors : That the creditors assented that if he would come into this arrangement he should have his debt : That the farm was worth just about the amount of the mortgages, and if they had not agreed to that there would none of them have got their pay. He should have held on to the mortgage but for this arrangement, and thought he should have got the land on the mortgage : That he had never sued his mortgage, as the condition was not broken until about four years ago. And it is agreed, that if any facts proved on trial which either party shall deem important, are here omitted, they may be added to the case hereafter.

*Joseph Bell*, for the defendant.

On the facts stated, we hold 1st, that the defendant is not liable, because the attaching creditors who claim the priority of attachment on account of the defendant's default, had knowledge of the plaintiff's attachment before they made their own.

The statute, Nov. 5, 1813, 1 *N. H. Laws* 109, under which the plaintiff's attachment was made, provides that when the estate of any person shall be attached on mesne process, &c., the officer making such attachment shall, *in addition to the duties now by law required of such officer*, leave a true and attested copy of such writ, together with a true and attested copy of his return thereon, with the town clerk, &c.

And the attachment of such real estate shall not be deemed and considered as made, until such attested copy and return shall have been left in manner aforesaid.

The statute has in this case imposed a new duty on the attaching officer.

Land not being, like personal property, subject to seizure

and removal, the evidence of an attachment was necessarily confined to the officer's acts and return on his precept.

This might be, and frequently was, altogether secret; and *liens* on real estate were created in this way, which very much embarrassed the honest transfer of real estate.

The same difficulties once existed, and in much the greater portion of the world still exist, in regard to the common transfer and conveyance of real estate by deed.

These difficulties were early removed in this state and throughout New-England, by the statutes requiring all deeds of real estate to be recorded in the public registry, for the public information.

But in regard to conveyances by attachment, &c. the difficulties remained till the statute of 1813 removed them.

The object of the statute, then, is palpably to give notice, or the *means of notice,* to all concerned, that the property is under attachment.

The leaving the copy with the town clerk is for this purpose and no other. It is a *means of notice.* Knowledge of the fact is the object and end.

*Leaving* the *copy* is but *one means* of obtaining the end.

It would be disrespectful to the legislature, and contrary to all legal analogy, to hold that when the *end is attained,* a particular *mode,* or *means,* in itself frequently destructive of the end, should be required to be pursued.

The statute of conveyances of February 10, 1791, *N. H. Laws* 190, is as strong in its language as the statute of attachment. It provides that all deeds, &c. signed, sealed, &c., and acknowledged and recorded, &c. shall be valid to pass, &c.

And *no deed,* &c. shall be good and effectual in law to hold such lands, &c. against any other person but the grantor and his heirs only, unless the deed be *acknowledged and recorded* in manner aforesaid.

The language in this case is, to say the least, as strong as in the case of attachment.

Kittredge
vs.
Bellows.

No deed, &c. shall be *good* and *effectual* to *hold* such lands, &c. unless *acknowledged* and *recorded* in manner aforesaid.

But nothing is better settled than that all such deeds are *good* and *effectual* in law, though not acknowledged and recorded, if the second grantee had knowledge of the first deed. 4 *Mass.* 641; 14 *Mass.* 296; 16 *Mass.* 116.

The same principle has been applied to an *attaching creditor* who had knowledge of an *unrecorded conveyance.* *Priest* vs. *Rice*, 1 *Pick.* 164; *M'Meacham* vs. *Griffing*, 3 *Pick.* 149. Why not, then, apply it to an *unrecorded* or mislodged copy of an attachment?

The principle is, that actual knowledge of the facts of conveyances dispenses with the legal requisitions of a record —which is merely constructive notice to all.

In such case, the reason of the law of recording is satisfied by shewing the very object of the law—personal knowledge of the conveyance, already attained.

The clause in the statute of attachment which requires a copy of the writ to be lodged with the town clerk, is now, and it is believed to be peculiar, or until recently so, to this state.

The whole object is notice to the world in the same manner as the registry of a deed. It is no more essential to an *attachment* than *recording* a *deed* to its validity.

The statute in the one case says that the attachment shall not be deemed as made until the copy shall have been left; and in the other, that *no deed* shall be good unless *recorded.* But notice direct and personal is good in the one case; why not in the other? Will it be said that the deed passes the title, though not recorded?

The law has been solemnly adjudged here, that an unrecorded deed, delivered up and cancelled, leaves the title in the grantor; and this on the express ground that until the registry such a deed gives only an inchoate, or imperfect title. 1 *N. H. Rep.* 11.

But the *lodging of the copy* is not an attachment, any more than *recording a deed* is its *execution* and *delivery*. The one is *unnecessary* to the *attachment*, as the other is to a conveyance.

The statute of attachment requires the leaving of the copy of the writ with the town clerk, *in addition to the duties now required*.

Whatever, therefore, was required before the statute of 1813, to make a valid attachment of real estate, must still be done; and in *addition* thereto the copy must be left. This is clear on the statute itself.

The attachment is not *deemed* to be made until the copy is left, nor is the deed made *effectual* to hold the land until recorded.

But both may equally be made good when the only object of the statutes is effected by bringing personal knowledge of the making the attachment and the making of the deed home to the party claiming against them.

An attachment then is *now* something else than leaving the copy with the town clerk.

It is all now that it was required to be before the statute of 1813—leaving a copy in addition.

It requires now, as it did then, a competent officer and a legal precept in his possession, with the direction and authority of the plaintiff to seize or levy on the land; a present power to do it and a return on the writ to that effect.

Now all these requirements are found in the case of Kittredge *vs.* Phillips, on the 27th January, 1825.

Heaton was competent to make the service; had a lawful precept, and was, as the plaintiff alleges and admits, directed and authorized to make the attachment.

Did he do it on that day? There is no doubt of this. He was on the land early, and had all the means necessary to effect it, and he so made his return.

We say, then, that all was done on the 27th January, 1825, which was required before the act of 1813, to make

a valid attachment for Kittredge before any other creditors pretended to attach.

Had the other attaching creditors knowledge of his proceedings when they made their attachments ?

The attaching creditors whose attachments on the record preceded the plaintiffs are—

1. Bellows & Redington, W. & D. Buffum, W. Buffum : claims $191,64.

It is admitted that Heaton could not have lodged his copies before these attachments were made, and consequently there is no default so far as these are concerned.

2. R. Watkins.   Claim $107,95.

Watkins swears that Heaton informed him, about noon on the 27th January, that he had attached the real estate of Phillips and had left no copies, and his attachment was not made till after 2 o'clock on the same day.

Here was express notice directly to the party long before his attachment ; in all respects as full as if Heaton had at the time lodged his copies with the clerk.

3. The next attaching creditors are T. Seaver and J. Redington ; claims $131,13.

In regard to these, Watkins swears that he had the writs and copies in his hands, and was a deputy sheriff when he made the inquiries aforesaid of Heaton, and when Heaton told him he had attached Phillips' real estate ; and that he went immediately after and lodged the copies with the town clerk.   Here was express notice of the attachment to the officer who made the attachment for Seaver and Redington before their attachment.

It has been repeatedly held, that notice to the second attaching officer of a prior attachment of personal property is sufficient to prevent the second attachment.   It is not necessary to carry notice home to the plaintiff himself.   The principle in this case is the same, only the second attachment may take effect, but is postponed to the first, on account of the notice.

The only remaining creditors, before the plaintiff, in this case, are D. Gilbert and Grant & Stone—claims $104,44.

The copies in these cases were not left with the clerk till 7 or 8 o'clock, P. M. on the 27th January. And Watkins swears that Heaton told him at noon that he had made an attachment for the plaintiff, and that he told Field, who made the writs for Gilbert, and Grant and Stone, when he received the writs from him, that Heaton had made some attachments and left no copies. These writs were served by Watkins.

Here there was express notice of the plaintiff's attachment by Heaton, both to the attorney who made the writs, and the officer who served them.

Whenever notice is required by law in any case, it may as well be given to the agent who is authorized to do the act, as to the party himself. *Paley on Agency* 199; 1 *Term Rep.* 16; 13 *Ves.* 121, *&c.*

Here it was given, both to the plaintiff's attorney, who made the writs, and to the officer who made the attachments.

Notice cannot well be conceived to be more express or more direct than in all these cases; and these are all the cases that precede the plaintiff's attachment.

The plaintiff's attachment then having been made on the real estate of Phillips early on the 27th January, and so returned on the writs and copies lodged on the 28th, judgments duly recovered and a levy made on the property within thirty days from judgment, and in due form of law; and express notice being proved as to all the attaching creditors whose attachments had been completed by lodging copies previous to his own, that he had attached the property in question previous to them—leaves the plaintiff's title to the lands included in the levy as against those attaching creditors, without, as we believe, the shadow of a legal doubt.

The complaint of the plaintiff is, that by the omission of Heaton to lodge his copy in season, Watkins and others obtained a priority of attachment.

Our answer is—

1st. That notice of the attachments is equivalent to the leaving of the copy, and that the evidence shows this notice to have been given in every case of an attachment claimed to be before the plaintiffs, and that,

2d. This exception could only be taken by those who had gone on and in due time had completed their levies according to law.

The transfer of title by force of the statute requires a series of acts within specified times.

The *priority* gained by an *attachment* may be lost by an omission to *levy.*

In this case, *none* of the attaching creditors made any levy at all, save Watkins, and he only on the four acre piece —which we shall consider by itself.

How then is the complaint of the plaintiff, that he is injured by others obtaining a priority of attachment by Heaton's omission, made out ?

Suppose no attachments had been made by Heaton at all for the plaintiff, and all other things had taken place as they have, would not the plaintiff have held the land notwithstanding the attachments ?

Unless these attachments were followed up by levies within thirty days, it is perfectly clear that they became wholly unavailing. The plaintiff, then, fails wholly in sustaining the charge which he alleges against the defendant, that by reason of Heaton's neglect to leave a copy of the plaintiff's writ with the town clerk, other creditors who did so leave copies, obtained a priority of attachment, and the plaintiff thereby lost his attachment :

1st. Because he did not lose his priority of attachment, as against those who had express knowledge of his attachment ; and

2d. Because all those who left copies have omitted to levy at all, and thereby rendered their supposed priority of attachment on the facts in this case wholly immaterial and unavailing.

This brings us to the second subject of inquiry, which is,

If the plaintiff has lost the benefit of his attachment and levy, it is not owing in any manner to any acts or omissions of the defendant or his deputy.

II. We say, in the second place, that whatever the plaintiff may have lost, it is no ways chargeable to any acts or omissions of the defendant or his deputy.

We think we have fully shewn that in any controversy in regard to the title to the land in question between the plaintiff and Watkins, or any others who claim to have obtained a priority of rights by defendant's neglect, the plaintiff's title would unquestionably prevail.

This is in fact self-evident on the facts stated in the case, if knowledge of the plaintiff is in law eqivalent to leaving a copy; that is, if the substance is equal to the form; and seems to me fully to answer the charge in the plaintiff's declaration—certainly as stated in his first, or original count.

The loss, if any, has not been on account of any title obtained by these attaching creditors, but by the proceedings of Elisha Hooper, under his mortgage, as connected with these attachments.

This will make it necessary to look particularly at this part of the case.

The plaintiff charges that he delivered his writ to Heaton, the defendant's deputy, January 27th, 1825, against Phillips: That Heaton was directed to attach Phillips' interest in the farm on said day, and did not until the 28th: That Bellows & Redington and others, creditors, in the mean time perfected their attachments: That all afterwards obtained judgments, May term, 1826: That the land attached was subject to a mortgage to Elisha Hooper, who entered for condition broken, and foreclosed his mortgage, May 30, 1826; and that the attachments of the creditors aforesaid remained in force until after Hooper's mortgage was foreclosed, and that the plaintiff has thereby lost his debt.

This is the complaint in substance, as stated in the plaintiff's second count.

Now we concede that the *leading* facts are proved, as stated in this count in the declaration. But we contend, that on the *whole facts proved and stated* in the case, the loss which the plaintiff has suffered, if any, is the result of his own negligence, and not of any acts or omissions of the defendant or Heaton.

For the present purpose, we concede that Heaton had the plaintiff's writ; was directed to attach all the right of Phillips in the land on the 27th, and did not leave his copy until the 28th: That other creditors of Phillips in the mean time perfected their attachments: That Hooper had a mortgage on the land: That the condition was broken in February, 1825, and the plaintiff levied on Phillips' interest in the whole farm, May 19, 1826, in due form of law.

Still we say the defendant is not accountable in damages in this action, because Phillips had *nothing* in the land *at the time of the plaintiff's levy on the 19th May*, 1826.

In regard to this the case finds—That Phillips mortgaged his farm to Hooper; that the condition of the mortgage was broken in February, 1825; that Hooper, on *the 18th day of May*, 1825, leased the farm to Allen till April 1, 1826, for the rent of $65,00; that Allen held the farm under Hooper until the expiration of that lease, and paid the rent to Hooper; that Hooper, on the 2d day of April, 1826, leased the same farm to Allen and White for a year, and that they held and paid rent accordingly.

Now we say, in the language of the chief justice in the case of Kittredge *vs.* Bellows, 4 *N. H. Rep.* 433, that "as 'Hooper remained in the peaceable and continued actual 'possession of the land by his tenant for a year after the 'condition was broken, the right to redeem was lost by the 'neglect of those who had it to exercise it within the year." —4 *N. H. Rep.* 433; *Gilman* vs. *Hidden*, 5 *N. H. Reports*, 30.

The condition of Hooper's mortgage it is agreed was broken in February, 1825. He entered by his tenant, Allen,

on the 18th May, 1825, and "continued in the peaceable and continued actual possession" of the land until the 18th May, 1826. This wholly extinguished all the rights of Phillips in the land—so that when the plaintiff levied his execution, on the 19th May, 1826, Phillips had nothing in the land. And if Heaton had left his copy with the town clerk on the instant he made his attachment on the 27th January, 1825, and before any others had attached, the plaintiff would have been just as well and no better than he is now. He would have lost his debt, *not wholly by the defendant's, or Heaton's,* but *by his own, negligence.*

To maintain this action, the plaintiff must show some act or omission of Heaton's which is against the law or rule of his duty, and that this act or omission has been injurious to himself. This is the law of the case. The defendant is to pay only what the plaintiff has lost by Heaton's omission to make the plaintiff's attachment in due form of law.

But it is perfectly clear, that if Heaton had made the attachment for the plaintiff, in perfect conformity to the law in all respects, and the plaintiff had conducted just as he has, he would have been in no better condition than he is now.

There is no pretence that the plaintiff omitted to make his levy earlier, on account of Heaton's negligence.

His complaint is, that he did not redeem after his levy, because it would have availed to the benefit of others and not to himself, on account of Heaton's neglect; and this view of the case the court have sustained. But it is no where intimated that his omission to levy sooner was owing to Heaton's neglect; and the plaintiff could not redeem until his levy was made. His omission, therefore, to make his levy until Phillips ceased to have any thing in the premises fully exonerated the defendant from all responsibility for Heaton's neglect in the service of the writ, for the plain reason that no service of the writ, however formal and cor-

rect could, under the circumstances, have availed the plaintiff.

There must be a default of Heaton which is injurious to the plaintiff, to maintain this action.

Suppose this farm had never belonged to Phillips at all? or suppose the equity of redemption had expired before the plaintiff obtained judgment? Could this action be maintained? Or suppose the sheriff is directed to attach the property of an insolvent debtor, and that he should make an informal attachment, and the debtor should die, and his estate be represented and settled as an insolvent estate? Or suppose he should act informally on void or fraudulent process, or informally attach property not belonging to the debtor, or informally attach property belonging to a firm, at the suit of a creditor of one of the firm, and afterwards should be required to attach the same property for the creditors of the firm, would an action lie? Certainly not. 2 *Mass. Rep.* 374; 4 *ditto* 498; 6 *ditto* 242; 12 *ditto* 163; 8 *ditto* 79; 1 *Pick.* 156, 192; 3 *Pick.* 199, 445.

To entitle the plaintiff to damages for the default charged in this case, he must show, either that the other attaching creditors who obtained the priority by Heaton's neglect, levied within the thirty days from judgment, and so exhausted the whole of Phillips' interest in the land, or that he himself made the levy while Phillips had an interest in the land, which levy was rendered unavailing by the subsisting *lien* of the attaching creditors.

Defendant is not bound to insure the property attached to the plaintiff at all events. He is not bound to insure the title of Phillips, or warrant it against the claims of Hooper. The defendant is only bound to make good any injuries arising from his own omissions, and only them *as against those who have taken advantage of the defendant's omissions to the plaintiff's injury.*

The default of Heaton in this case had no effect whatever on Hooper's rights or proceedings. It neither hasten-

ed nor retarded his foreclosure of his mortgage. He obtained his title at the same time and in the same manner that he would whether the plaintiff's attachment has been made perfect or not.

The equity of redemption might have expired before the return day of the writ, or at any time before judgment, or the plaintiff might choose to abandon his attachment rather than pay so large a sum to discharge the mortgage; and the plaintiff could not in either of these cases have maintained any action for the default as in this case, because there would be no injury whatever arising from it to the plaintiff.

In considering Heaton's default, as charged in this case, we have to look only to such injuries as arise or flow from it alone.

If Heaton attached and did not leave a copy, and Watkins did, this would give Watkins a priority to the plaintiff's injury, and the defendants would be answerable for the damages; but if after this Watkins should *omit to levy within thirty days from his judgment,* and the plaintiff should make his levy within the thirty days, it is clear the defendant would not be answerable for the default, because the plaintiff would hold the land and receive no injury.

This is perfectly clear, if we lay the mortgage of Hooper out of the case.

If those who obtained the priority by Heaton's default had not levied within the thirty days, and the plaintiff had, he would hold the land, and no action could be maintained against the defendant.

In this case, none of those creditors made any levy whatever. Their priority is therefore lost. And the whole injury which the plaintiff has sustained arises from the claim of Hooper to the land.

It is Hooper, and not the attaching creditors, who has taken the land; and whether Heaton made his attachment good or bad, Hooper would in the same manner have taken the land.

The case is, therefore, one of a *voluntary abandonment* of his attachment by the plaintiff and the other attaching creditors. The plaintiff omitted to levy until his debtor had nothing in the land.

The other attaching creditors who obtained priority by Heaton's default, omitted to levy altogether. *There was, therefore, no instant of time when the priority of the other attaching creditors, as gained by Heaton's default, prevented the plaintiff from redeeming and holding the lands;* for he, by *omitting to levy* till after the equity of redemption was foreclosed, never had any right to redeem at all; and so the priority of attachment worked him no injury whatever.

To make this matter plain as possible, suppose the interest which Heaton was required to attach had been a life estate, and Phillips had died on the 18th May, 1826: would Heaton's omission to leave a copy in such case have been actionable? Or suppose it had been an estate for years, and the term had expired on the 18th May: or that a hurricane had swept over the farm on the 18th of May, and destroyed its value, or an earthquake had engulphed it: or that personal property had been attached, and that after judgment and before the thirty days had expired, it had been destroyed by fire or flood, without any default in the officer?

In short, all that the officer can be answerable for is that no loss shall happen to the plaintiff by his default. He is not bound to insure a continuance of the debtor's title. And in this case, a levy on the 19th of May, 1826, would have been just as nugatory and valueless, as to the plaintiff's title, with a *good* attachment as a *bad;* and the priority of attachment obtained by the attaching creditors by Heaton's default would affect the case in no manner whatever, as their lien would cease on the 18th of May.

The defendant was not bound to redeem Hooper's mortgage.

The other attaching creditors never either levied or re-

deemed. Their attachments, in legal contemplation, therefore, were of no importance whatever in the case, unless, as was supposed on the former trial, they had prevented the plaintiff from redeeming the Hooper mortgage.

But we have seen that this is altogether a mistake; that the plaintiff by his own voluntary act or his own negligence omitted to levy until the equity of redemption had wholly run out; until his debtor had nothing to pay; and the plaintiff consequently nothing to lose by the default of Heaton, and until the *lien* of the attaching creditors had also ceased by the extinguishment of the debtor's title.

The supposed difficulty, therefore, in the plaintiff's redemption, occasioned by the priority of the attaching creditors' lien obtained through the default of Heaton, is wholly groundless—they having no lien at any time after the 18th of May, 1826, and the plaintiff having no right to redeem before the 19th of the same month, the creditors' lien and the plaintiff's right of redemption never existed *simul* and *semel*, and of course the one could not affect the other.

III. One word as to the four acre piece attached by Watkins on the 29th January, 1825, and afterwards levied on by him. This piece is not included in the mortgage to Hooper, but belonged to the farm of Phillips.

If Heaton was only directed to attach the equity of redemption, his return is sufficient for that; if on the whole farm, the return as made is sufficient to cover the four acre piece. Heaton's attachment was perfect at 8 o'clock on the 28th of January, 1825.

If he was directed to attach the whole farm, and did so do, the plaintiff's attachment on the four acre piece was perfect at that time, and the plaintiff either did or should have levied on it in a proper manner to hold it.

Watkins' first attachment was only of the *equity of redemption*. This is clear from his making a second attachment on the 29th of January—long after the plaintiff's attachment was perfect. By attaching the second time spe-

cially Watkins is estopped of record from claiming the same under the first attachment, and the plaintiff will hold the same, or might have held it, if he had made his levy in a proper manner. Whether he has or not, it is the same to the defendant. The value of this piece must at all events be deducted from the plaintiff's damages.

It is said that Hooper entered under a writ of possession on his judgment on the 30th May, 1826, and under public declaration of his entry to foreclose.

We answer, that this would not nullify or neutralize the fact that he entered on the 18th of the same month, and leased to Allen, nor the legal effect of such facts. The case of *Fay* vs. *Valentine, 5 Pick. Rep.* 418, is very different from this.

That was against the mortgagee himself. The court there say that plaintiff's entry while a suit was pending " cannot be considered as intended to foreclose. Had she discontinued her suit, it might have been otherwise ; but to pursue that at the cost of the *mortgage* should be construed to be a waiver of her right to foreclose under that entry, and is similar to the receipt of rents after notice to quit." " Why should the mortgagee obtain her conditional judgment, and eventually her execution, if she was already in possession for foreclosure ? The law will consider this act as an acknowledgment that, though in possession, she had not begun to foreclose," &c.

The present case differs widely from Fay *vs.* Valentine. The suit in this case was not against the mortgager, but against a stranger in possession. The judgment was obtained March term, 1825, and the entry was made May 18th, 1825, some ten days before the writ of possession was taken out. Judgment had been rendered in this case before the entry.

No cost could be added in this case by the proceedings against Allen to the mortgager. Phillips might have redeemed by paying the debt and interest, without any cost

whatever ; and so might the plaintiff, if he had levied in season.

The mortgager's rights were in no manner affected by the proceedings against Allen till the entry by the mortgagee. If there was any fraudulent purpose or act to deceive or defeat the mortgager, it might be otherwise.

If a tender had been made by any one between the 18th and 30th of May, it might deserve another consideration ; but no act was done by any one after the 18th of May—no demand of an account or offer to pay.

The two modes of foreclosure are both sanctioned by the law ; the one by a public entry, either under process or without, and a public declaration of his purpose to foreclose —the other, a peaceable continued actual possession for an entire year after condition broken. They are not at all inconsistent with each other. The evidence in the one case is more safe and certain than in the other. But the result is not more certain.

Hooper was in the peaceable continued actual possession from May 18, 1825, to May 18, 1826, and this wholly extinguished the plaintiff's right under his levy, as Phillips on the 19th of May had nothing in the land.

*Handerson*, for the plaintiff.

It is contended, that the defendant is not liable, because the creditors, who claim priority of attachment on account of the defendant's neglect, had notice of the plaintiff's attachment before they made their own, and so gained no priority. The whole force of the argument on the other side rests upon this.

I do not stop to enquire whether they had in fact such notice, because I deny that the fact is at all material.

Until Heaton had left the copy with the town clerk, there was no attachment of which there could be any notice. What he had done prior to that created no lien upon the land against any person, creditor or purchaser, with notice

or without notice. It is true, he had been upon the land with the writ and with orders to attach the land; but this does not constitute an attachment. The words of the statute are too plain to be mistaken. "And the attachment of 'such real estate shall not be deemed and considered as 'made until such attested copy and return shall have been 'left in manner aforesaid." It would seem hardly possible to misunderstand the meaning of this clause in the statute, or to make it clearer by any reasoning. But it so happens that this very clause has come under the consideration of this court, and its meaning been declared. It is settled that the leaving of the copies with the town clerk constitutes the attachment. *5 N. H. R.* 275, *P. Bank* vs. *Burnham.*

If no attachment was made until the copies were left with the clerk on the 28th day of the month, it is a perversion of language to say that other creditors had notice of the plaintiff's attachment when they made their own. The plaintiff's attachment did not then exist.

The doctrine of notice in cases of conveyances by deed has no application in cases of attachment. There is no analogy between the two classes of cases.

In regard to attaching creditors, the law has always been, the first in time, the first in right. 1 *Pick.* 164, *Priest* vs. *Rice;* 4 *do.* 253, *Cushing* vs. *Hurd.* One creditor must necessarily have the same right to secure his debt by attachment that another has. And it is of no importance, that one may know that the other has procured a writ and made some progress towards an attachment. He who first perfects his attachment, by doing all the law requires to constitute an attachment, will hold the land. And why should he not? Why shall not one man, who knows that another is making an attachment, be permitted to obtain a previous attachment if he can do it?

When a deed has been duly executed and delivered, the land has passed as between the parties, although the deed may not have been recorded. 4 *N. H. R.* 191, *Farrar* vs.

*Farrar ;* and any attempt afterwards by the grantor to convey the land to another is a fraud ; and he who takes such second conveyance, knowing that there has been a previous conveyance, is also guilty of fraud. And it is this fraud which defeats the second conveyance. It is wholly immaterial in what way notice of the first conveyance is brought home to the second purchaser. If he has notice in any way, he is guilty of a fraud. But in the case of two attaching creditors, each having honest debts, it is impossible to consider one as guilty of a fraud, merely because he has gained a previous attachment by using greater diligence than the other, although he might have notice that the other was making an attachment. The analogy, then, between cases of conveyances by deed and attachments fails altogether.

Another ground of defence taken is, that the creditors who gained attachments prior to that of the plaintiff, by Heaton's neglect, never availed themselves of those attachments, and so never stood in the plaintiff's way, had he seen fit to avail himself of his attachment in season.

The answer to this is obvious. As the attachments of the other creditors remained upon the land until Hooper's mortgage was foreclosed, it was wholly impossible that the plaintiff should obtain any benefit from his attachment. The first step to be taken was to redeem the land by paying the debt secured by the mortgage. But when this was done, who was to have the benefit ? Not the plaintiff, but the creditors who by Heaton's neglect had obtained attachments prior to the plaintiff's.

Another ground of defence is, that the plaintiff has lost his debt by his own negligence, in not extending his execution upon the land until the right to redeem the land was gone.

Let us see how this is. We deny that the right to redeem was lost on the 18th May, 1826.

There are two purposes for which a mortgagee may enter

upon the land mortgaged. The one, to take the rents and profits ; the other, to foreclose the right to redeem. When he takes possession after condition broken, it is to be presumed he enters to foreclose, unless the contrary appears. 5 *Mass. R.* 109, *Taylor* vs. *Weld.*

The facts show that Hooper made no entry with a view to foreclose, until he entered under his judgment and execution on the 30th May, 1825. He brought his writ of entry on his mortgage in February, 1825, Allen then being in possession under Phillips. When he made the lease to Allen on the 18th May, 1825, the object manifestly was to get the rent from that time, and to satisfy Allen that it was not intended to turn him out. It did not enter the mind of Hooper that he was entering to foreclose. This is evident from his proceeding with his suit to judgment, and entering under his execution, and then declaring publicly that he entered to foreclose. Whatever might have been the legal effect of giving the lease to Allen, if it stood alone and unexplained, it was surely competent for Hooper to waive any right he might have acquired by giving such lease, and consider his entry to foreclose as made when he said it was—on the 30th May, and not till then. And so the law is settled to be in *Fay* vs. *Valentine*, 5 *Pick.* 418.

The subsequent proceedings, the delay to sell the land until after the 30th May, 1826, shows clearly that Hooper and all concerned supposed the mortgage not foreclosed until after that time.

But it is of no importance when the right to redeem was lost. The other attachments remained upon the land until the right to redeem was gone. There was no moment of time when the plaintiff could redeem the land and obtain his debt. The attachments were an insuperable barrier at all times.

It is no answer to this argument to say, if Heaton had done his duty, and the plaintiff had conducted just as he has done, he would have been in no better condition than

he now is. Heaton did not do his duty—and how the plaintiff would have conducted if he had, does not appear. The counsel on the other side seem to suppose that the plaintiff was bound to proceed just as he would have been bound to do, if Heaton had done his duty; that he ought to have caused his execution to be extended within thirty days after judgment, and to have redeemed the land by discharging the mortgage. But of what avail would that have been? In so doing he would not have advanced an inch towards getting his debt. Does any one suppose that if the plaintiff had extended his execution sooner, and paid the mortgage money, he would have got his debt? Would the other creditors, who had prior attachments, have remained idle and suffered him to place himself in their place? We are bound to believe they would have conducted like men of common understanding, and to save their own rights, defeated him. They did not extend their executions, because under the circumstances it was not necessary. They knew that the plaintiff's hands were tied, and that they had only to keep them so, until they could get their debts by a sale of the land under the contract with Hooper. Their attachments remained upon the land until the title vested absolutely in Hooper. It is clear, then, that the plaintiff has lost his debt, not by his own negligence, but by that of Heaton.

It is made a question, whether the plaintiff is entitled to damage on account of the four acres upon which Watkins extended his execution. This parcel of land was attached by virtue of the plaintiff's writ. But before the copy was left with the town clerk, Watkins, on the 27th January, at 15 minutes past 2 of the clock in the afternoon, perfected his attachment. Watkins attached all the right the debtor had to redeem, and all the right, title and interest he had in the farm. The four acres were not in the mortgage, but they were in the farm. The circumstance that Watkins afterwards caused a return of a particular attachment of the four acres to be made is immaterial.

RICHARDSON, C. J., delivered the opinion of the court.*

This case has been argued with great force and eloquence on both sides.

The plaintiff complains, that a deputy of the defendant, having in his hands the plaintiff's writ against Phillips, and being upon the lands of Phillips, and having an opportunity to secure plaintiff's debt by perfecting an attachment of the land, by his negligence permitted other creditors of Phillips to gain priority of attachment, and so the plaintiff's debt has been lost.

The first answer which the defendant gives to this complaint is, that the creditors who are supposed to have gained such priority, had notice when they made their attachments that the land had been previously attached by virtue of the plaintiff's writ, and so in fact they gained no priority.

It is not disputed, that when those creditors went to the land in order to attach it, they had notice that the officer had been previously upon the land, for the purpose of attaching it by virtue of the plaintiff's writ. It therefore becomes necessary to determine the legal effect of such notice.

On the part of the defendant, it is contended that the object of leaving copies with the town clerk is only to give notice of the attachment, and that as he who takes a deed of land, knowing that another has a previous unrecorded deed, cannot hold the land against the unrecorded deed, so he who makes an attachment of land and files the copies with the town clerk, knowing that another has previously attached the land, cannot hold the land against the first attachment, although no copies may have been left with the town clerk upon that attachment.

To this it is replied, that until the copies are left with the town clerk there is no attachment of which any one can have notice; and so this ground of defence fails altogether.

In order to settle the question thus presented, it becomes

PARKER, J., having been of counsel, did not sit.

necessary to determine what an attachment of real estate is in this state?

An attachment of land is with us a species of lien created by statute, by which the land is held to respond the debt or damage and costs which a plaintiff may recover in a suit. It is created entirely by the statute, and is just what the statute makes it, and nothing more.

It is very obvious, that as a debtor may have many creditors, all of whom have a right to secure their debts by an attachment of real estate, in prescribing the mode in which the attachment should be made it was of the highest importance to provide that it should be done in such a manner that the existence of the attachment and the time when it took effect should be easily and certainly known by all the creditors. Any uncertainty in these respects must necessarily tend greatly to embarrass creditors, and might lead to very expensive and vexatious litigations.

It seems formerly to have been understood that in order to make an attachment of land it was necessary that the officer should go upon the land. But such an entry was far from giving that publicity to the attachment which the exigency of the case required. Besides, if the officer returned upon the writ that he made the attachment on a particular day, his return could not be contradicted, although he never had been upon the land at all.

To remedy this uncertainty, the statute now provides that an entry upon the land shall not be necessary to constitute an attachment; but that the officer shall leave with the town clerk copies of the writ and return, and the town clerk shall minute on the copies the time when they were left; and no attachment shall be considered as made until the copies are so left. This language is too clear and certain to admit a doubt. It is thus obvious that the legislature have made the very essence of the attachment to consist in placing the copies of the writ and return in a situation where they will be open to the inspection of every body.

And a more safe, certain and convenient mode of attaching real property, no human ingenuity could have invented.

Such being the meaning of the statute, it is obvious that the first ground of defence assumed by the defendant fails altogether. When the creditors who gained the priority, made their attachments, this plaintiff had acquired no right to the land which could be defeated by those attachments. Those creditors could not have had notice of any attachment made by the plaintiff, for no such attachment existed. They knew that the officer who had the plaintiff's writ supposed he had made an attachment, but they also knew that in fact he had made none. They then had a perfect right to attach the land in the manner they did, and they gained the priority, not by fraud, nor by any unfair or improper conduct, but by the negligence or mistake of the officer who had the plaintiff's writ.

There is no analogy between this case and that of a man who takes a conveyance of land, knowing that the land has been previously conveyed by an unrecorded deed. In that case the attempt is to defeat a vested estate in such a manner as to amount to a fraud.

In this case there is no pretence that the creditors who gained the priority in their attachments, were guilty, in so doing, of any fraud. Notwithstanding they knew the plaintiff was about to attach the land, they had a perfect right to gain a prior attachment if they could.

Another answer given by the defendant to the action is, that the creditors who gained priority in their attachments over the plaintiff, never extended their executions upon the land, so that if the plaintiff had extended his execution upon the land in season, and had discharged the mortgage, he might have saved his debt. If, therefore, he has lost his debt, it is by his own neglect, and not by that of the defendant's deputy.

But it appears that on the 30th May, 1825, Hooper took possession of the land under a writ of seizin, and of course,

the land not being redeemed, the right to redeem was lost on the 30th May, 1826.

The creditors who had gained the priority obtained judgment in their suits at May term, 1826, and their attachments, which continued for thirty days after judgment, must have remained upon the land until some time in June that year, that is, until after the right to redeem the land was lost.

There was, then, no time when the plaintiff could have extended his execution and redeemed the land, without taking it subject to the attachments of those who had gained the priority. By attempting to redeem he might have defeated the arrangement those creditors made with the Hoopers for the sale of the land, and have compelled the creditors to extend their executions; but there is not the slightest probability that he could in any way have obtained any satisfaction of his judgment from the land.

And this seems to be a decisive answer to this ground of defence.

It is insisted that the plaintiff has lost nothing in the four acres, which were not included in the mortgage, by the fault of the officer, and of course is not entitled to any damages on that account.

But the facts show that the four acres were attached by virtue of the plaintiff's writ, and that Watkins, through the neglect of the officer who had the plaintiff's writ, obtained a priority in his attachment of that land.

The first attachment of Watkins bound the four acres, and this land stands on the same ground in this case as that which was under mortgage.

And we are of opinion that, according to the agreement of the parties,

*A verdict must be entered for the plaintiff.*