GRAFTON, NOVEMBER TERM, 1818.

WILLIAM W. POOLE *versus* J. B. SYMONDS.

Where a sheriff, having attached personal effects on an original writ, or taken them on execution, delivers them to a third person for safe keeping, such third person has such an interest in the chattels that he can maintain trover for them.
Goods seized by an officer on execution must be advertised within four days, and sold as soon after the expiration of four days, as can be conveniently done; otherwise another creditor may seize the goods.

TROVER for a mare. The cause was tried here at the last May term, upon the general issue, when it appeared in evidence that the mare once belonged to one *Ezra Flanders ;* that *Ziba Huntington*, a deputy sheriff, having an execution in his hands in favour of *P. Noyes* against *Flanders*, for about 30 dollars debt and costs, on the 36th of June, 1817, seized the mare upon the execution ; that *Flanders*, being desirous to procure time to raise money and pay the execution, and thereby prevent the sale of the mare, requested Huntington to delay the sale, to which Huntington, who had been directed by Noyes to grant Flanders any indulgence not inconsistent with the safety of the debt, assented. Huntington took the mare into his possession, and delivered her for safe keeping to the plaintiff, who gave Huntington his promise in writing to return her on demand. Poole kept the mare until the 8th of August, 1817, when she was attached as the property of Flanders, by the defendant, another deputy sheriff, on mesne process in favour of A. W. Morse, against Flanders, and is now held by the defendant by virtue of that

attachment. It did not appear that the mare was ever in the possession of Flanders after Huntington seized her, nor that Huntington had ever advertised her for sale upon the execution.

The jury returned a verdict for the plaintiff, and assessed the damages at thirty dollars.

*William Smith*, for the defendant, moved the court to grant a new trial, on the ground that the verdict was against law. He contended that the mare, having been delivered to the plaintiff merely for safe keeping, he was to be considered as the mere servant of the sheriff, without any legal interest in her, and therefore not entitled to maintain the action. 9 *Mass. Rep.* 104, *Ludden* vs. *Leavitt.*—9 *Mass. R.* 265, *Warren* vs. *Leland.*—14 *Mass. R.* 217, *Commonwealth* vs. *Morse.* He also contended that Huntington, having neglected to advertise within four days from the time of the seizure, and to sell at the expiration of the four days, in pursuance of the provisions of the statute of Feb. 15, 1791, (1.) other creditors had a right to attach the mare (2.)

(1) *N. H. Laws*, 133.

(2) 5 *Mass. R.* 699, *Caldwell* vs. *Eaton.*

*Gilbert*, and *J. Bell* for the plaintiff.

The opinion of the court was delivered by

RICHARDSON, C. J. On behalf of the defendant it is contended that Poole has not a sufficient interest in the chattel in question to enable him to maintain this action, and several decisions in the supreme court of *Massachusetts* are relied upon as directly in point; and it is not to be doubted, that, if those decisions were correct, this objection must prevail. But the decisions in this state have been different. In the case of *Eastman* vs. *Eastman*, in the county of Hillsborough, December term, 1814, where the case was precisely like the present one, except that the article in question had been taken upon mesne process in *Massachusetts*, and the plaintiff had become answerable for it to an officer there, the cases in the ninth volume of the Massachusetts Reports were cited by counsel, and considered by the court; but the court (Smith, C. J., and Livermore and Ellis, justices;) were clearly of opinion that the plaintiff might maintain the

action. No authority is cited by the court in *Massachusetts* in support of their decision ; nor is it recollected that the determination here was supported by authorities. We have, therefore, felt it to be our duty to re-consider the question, and endeavour by a careful examination of the adjudged cases which bear upon the point, to ascertain what the real law of the case is.

No man can maintain trespass, trover, or replevin for personal chattels, without either an absolute or special property in the goods, and also possession. But this possession may be either actual or constructive. Thus an executor is by construction of law possessed of the goods of the testator, and may maintain trover for them, although he has never been in the actual possession of them(3.) So where one had wreck by prescription or grant, and another took it away, trespass or trover lay before seizure(4.) And if A. in *London* gives J. S. his goods in *York,* and another takes them away before J. S. obtains actual possession, J. S. may maintain trespass or trover(5.) So if the owner deliver his goods to a carrier, or other bailee, although in such case another has the actual possession, still the owner has by construction of law a sufficient possession to maintain trover or trespass(6.) This constructive possession is not founded on the mere right of property, but upon the right of possession. For if he who has the absolute property has not also the right of possession, he can have no constructive possession. Thus, where the owner of goods let them for a year, and they were taken away by a third person within the year, it has been held that he could maintain neither trespass nor trover(7.) This constructive possession in one is by no means inconsistent with an actual possession in another. In many cases either he who has the actual, or he who has the constructive possession, may maintain trespass, trover, or replevin ; but a judgment in favour of one will be a bar to an action in favour of the other.(8.) In some cases he who has only a special property may have a constructive possession. Thus a factor, to

(3) *Latch* 214, *Hudson* vs. *Hudson.*

(4) *Fitz Herbert, N. B.* 207.

(5) 2 *Saund.* 47, *note* 1.— *Bac. Abr., Trespass, C.,* *pl.* 9, 10.

(6) *Chitty's Pl.* 48, 151.— 11 *John.* 285, *Thorp* vs. *Burling & al.*

(7) 4 *D. & E.* 489, *Ward* vs. *M'Carty.*— 7 *D. & E.* 9, *Gordon* vs. *Harper.*—8 *John.* 432, *Putnam* vs. *Wyley.*

(8) 2 *Saund.* 47, *note* 1.—48 *E.* 3, 20, *pl.* 8. —1 *Chitty's* 48.

Poole
*vs.*
Symonds.

(9) 2 *Saund.*
47, *note* 1 —1.
*Bos. & Pul.*
47,*by Eyre,C.J.*

(10) 2 *Saund.*
47, *note* 1.—1
*Strange* 505,
*Amory* vs.
*Delamirie.*—
13 *John.* 151.

(11) 2 *East's*
*C. S.* 635.—1
*Leach* 375.

(12) *Owen* 52,
*Blass* vs. *Hol-*
*man.*

whom goods have been consigned, but have never been received, has such a constructive possession that he can maintain trover(9.)

A special property in goods may in some cases be founded upon mere possession. Thus he who find goods which have been lost, has a special property in them, because possession is evidence of title(10.) Thus, too, where goods were stolen from a stage coach, it was held that they were well alleged in the indictment to be of the goods or chattels of the stage coachman, although he was the mere servant of the owner of the coach, and not answerable for the goods(11.)

A special property may also be founded upon a responsibility for, or an interest in, the possession of chattels. Thus he to whom goods are delivered merely to keep and re-deliver upon request, has a special property in them. 21 *H.* 7, 14 *Pl.* 23, where it is said the point had often been decided. *Jones on Bailment* 112.

That a sheriff, who has seized goods upon mesne process, or upon execution, an agister of cattle, a carrier, factor, consignee, pawnee, trustee, &c. have a special property, admits of no doubt. 11 *H.* 4, 17 *Pl.* 39.—48 *E.* 3, 20 *Pl.* 8.—2 *Saund.* 47.—6 *John.* 195.—12 *John.* 403.

But a mere servant has not a special property in goods. Thus where a servant was employed in a shop merely to sell goods, he was held not to have a special property in them(12.) Nor has a shepherd, who is employed to tend sheep, any property in the sheep. The reason is, because the law considers the goods and the sheep as much in the actual possession of the owner, as if the servant were not with them, and the servant is not responsible for them. If the goods or the sheep are taken away by a stranger, it is no injury to the servant, because he has no interest in the possession. But if a servant undertakes specially to be accountable for goods committed to his custody, he at once exchanges the character of a mere servant for that of a bailee, and has a special property.

Thus it seems that any person who has an absolute or a special property in a personal chattel, and a right to reduce it to immediate possession, has in law such a possession as will enable him to maintain an action to vindicate his right of possession; and this is what the law denominates a constructive possession. And any individual who has a particular interest in the possession of such chattel, whether such interest be founded upon the evidence of title which possession affords, as in the case of a finder of lost goods, or on a right to the use of the chattel, as in the case of a hirer, &c. or on some responsibility for it, as in the case of a sheriff, &c., has what the law denominates a special property, and may maintain an action whenever the special property is unlawfully invaded.

It now remains to compare the facts in the case before us with these principles. Huntington, having seized the mare upon execution, delivered her to Poole, and took his promise in writing to re-deliver her on demand. Did this contract impose any responsibility upon Poole? That it did, is not to be doubted (13.) The extent of his responsibility is immaterial. It is enough that he was responsible for the safe-keeping and re-delivery of the mare. This, according to the principles to be deduced from the books, gave him a sufficient interest in the possession to enable him to maintain this action. But it is said that Huntington had a special property in the mare; that two persons cannot have severally a special property in a chattel, and that, *therefore*, Poole would not have a special property in her. It is for those who hold this doctrine to shew why two may not have severally a special interest in a chattel, as well as two may have severally on the general, and the other a special property in it at the same time. The reason is certainly not very obvious. It is true that there are but two species of property in a chattel, absolute and special; but it by no means follows from this that two cannot have severally a special property in it. There can be but one absolute owner of a chattel, but it seems to us very clear that several persons may have

(13) 14 *Mass. R.* 196, *Webster* vs. *Coffin.* —14 *Mass. R.* 155, *Bailey* vs. *Jewett.*—11 *Mass. R.* 210, *Jewett* vs. *Terry.*—8 *Johnson* 474, *Slingerland* vs. *Morse & al.*

severally a special interest in it. Thus in the present case, when Huntington had seized the mare, he immediately became responsible both to the debtor and creditor, and thereby acquired a special property in her ; and when he delivered her to Poole for safe keeping, he did not part with his special property ; but the moment that Poole became responsible for the safe-keeping and re-delivery of her, he also acquired a special property in her, perfectly subordinate to, and not at all inconsistent with, the special property of Huntington. If, then, the mare was unlawfully taken by the defendant, it was an injury both to Huntington and to Poole, and either may maintain an action : but a judgment in favour of one will be a good bar to an action by the other. Flanders had the general property, but not the right of possession ; he could, therefore, maintain no action. Huntington's right of action was founded upon his special property and right of possession ; Poole's upon his special property and actual possession. If Poole is to be considered as a mere servant, he must be held responsible to Huntington only as a servant. For it would be repugnant to every principle of justice to hold him responsible as a bailee, while we allow him only the rights of a mere servant. But a mere servant is not responsible for goods forcibly taken from him ; and if Poole is to be considered as employed in that character, it would seem to be a good defence to any action Huntington may bring against him, that the mare was taken by force from him by the debtor, or any other person, without his fault. But this would undoubtedly be contrary to the understanding of the parties, and might defeat the very object of the contract. It is, therefore, the opinion of the court that the plaintiff had a sufficient interest in the mare to enable him to maintain this action, and thus this objection cannot prevail.

But the defendant further contends, that Huntington, having kept the mare more than five weeks without taking any step to complete the levy, the attachment, so far as respected other creditors of Flanders, was dissolved, and cites the case

of *Caldwell* vs. *Eaton* in support of this objection. Our statute relative to the seizure and sale of goods upon executions is precisely like that of *Massachusetts*, and we see no reason to doubt that the construction of their court upon the statute in the case just mentioned is correct. We are not, however, prepared to say that the sheriff can in no case with the consent of the debtor keep the goods more than four days before sale, without dissolving the attachment with respect to other creditors, provided he proceeds within the four days to fix and advertise the time and place of sale. When the sheriff seizes goods upon execution he should immediately within the four days proceed to advertise them for sale, and should sell them as soon after the expiration of the four days as can be conveniently done. If he does not do this, other creditors have a right to consider the attachment as dissolved, and to take the goods from his possession. The verdict in this case, must, therefore, be set aside and a new trial be granted.