# HILLSBOROUGH,

## DECEMBER TERM, A. D., 1838.

### WHITNEY *vs.* FARWELL.

The possession, by a receipter, of property attached, is so far the possession of the sheriff, that the latter, while the receipter retains actual possession, may make a second attachment, upon another writ, by making a return to that effect, and giving the receipter notice, with directions to hold the property to answer upon the second attachment.

If the receipter is unwilling to incur farther responsibility, he may, upon such notice, decline to hold the property for the security of any demand except that upon which it was first attached, and return it to the custody of the sheriff.

Where the receipter has permitted the property to go back into the possession of the debtor, a second attachment cannot be made without a new seizure ; and such notice to the receipter is of no avail.

In an action upon a receipt, it is a sufficient defence, *prima facie*, to show, that when the receipt was given there was but one attachment upon the property —that it went back into the possession of the debtor—and that the debt, upon which it was attached, was settled before the sheriff made any demand upon the receipter.

ASSUMPSIT, on a receipt, signed by the defendant, as follows, viz. :

"January 25th, 1833. Received of Pliny Whitney the following articles, attached by him as the property of Daniel May—namely : two horses, valued at two hundred dollars, and one two-horse sleigh, at twenty dollars ; which property I promise to deliver on demand, or account for it at the above price."

It appeared in evidence that the plaintiff, on the fourteenth day of October, 1833, demanded said horses and sleigh, and the defendant refused to deliver them. It was also in evidence that the only suit on which said property was attached, at the time of giving said receipt, was in favor of one Eliphalet Putnam, which suit was afterwards, on the 16th day

of February, 1833, settled by the defendant, by payment of the debt and cost.

The defendant introduced the testimony of his son, James B. Farwell, that Daniel May was the son-in-law of the defendant, and resided in Vermont—that at the time the receipt was given, May was at the defendant's, with the horses and sleigh mentioned in the receipt—that in the night of the same day on which Putnam's attachment was made, the plaintiff came to the defendant's house, and told him that he had come to attach the same property, in a suit Joseph Howard against May, and asked the defendant if he would let his name stand on the receipt for this attachment also—and that the defendant utterly refused, saying that he would have nothing more to do about May's debts.

The plaintiff, for the purpose of impeaching the testimony of this witness, introduced Mark D. Perkins, who served the writ in the present suit, and who testified that at the time he made said service he asked James B. Farwell if he heard any thing said between his father and the plaintiff when the plaintiff made the Howard attachment, and he said he did not; that he was at such a distance from them he could not hear what was said.

There was also, on the part of the defendant, the evidence of another witness, that he heard the defendant refuse to be responsible for the property on Howard's suit; and evidence introduced by the plaintiff to show that he was not in a situation where he could have heard any such declaration.

The horses and sleigh went back into the possession of May.

Upon this evidence the court instructed the jury that if James B. Farwell was discredited by Perkins, the plaintiff's witness, it must affect his whole evidence, and consequently there would be no proof that the defendant was ever notified of the Howard attachment, in which case this suit could not be sustained; and that if said James B. was fully credited, it must then appear that the defendant declined being answera-

ble on his receipt for the horses and sleigh, to satisfy the Howard attachment, and this rendered the defendant liable, if for any, only for nominal damages.

The jury returned a verdict for the defendant, and the plaintiff moved for a new trial.

*S. K. Livermore,* for the plaintiff.

*H. Newton,* for the defendant, cited 2 *Black. Com.* 442, 452; 7 *Mass. R.* 505; 2 *Mass. R.* 514; 9 *Mass. R.* 258, 261, 112; 11 *Mass. R.* 211, 219, 242, 317; 1 *N. H. R.* 294; 12 *Johns. R.* 407; 5 *Mass. R.* 163; *Esp. N. P.* 130; *Hobart's R.* 51, *Holmes* vs. *Twist*; *Ditto* 68, *Richards* vs. *Carvamel;* 1 *D. & E.* 20, *Stokes* vs. *Lewis;* 1 *Esp. N. P.* 86; 2 *N. H. R.* 66, 317; 5 *Mass. R.* 157; 12 *Mass. R.* 495.

PARKER, C. J. The contract of a receipter of property, held under attachment by an officer, is a contract *sui generis*, and the rules which govern it are framed to suit the exigencies of the case.

For some purposes he is considered a mere bailee, to keep for hire.

Thus it is his duty to deliver the property to the attaching officer on demand, unless the receipt specifies otherwise, in order that it may be applied to the discharge of the debt; and in those instances where he receives the property without any contract with the debtor, he is entitled to compensation for his care and custody. And if he do not deliver the property according to this duty, he is liable to the sheriff for the full value, notwithstanding the debt on which it was attached was much less than its value, unless he has returned the property to the debtor. 2 *N. H. R.* 142, *Bissell* vs. *Huntington.*

But the law recognizes a right, on his part, to permit the property to go again into the hands of the debtor, and then

considers his receipt, in effect, as a contract to pay the demand upon which it was attached, as he is in such case liable only to that extent.    If the plaintiff fails to recover a judgment, the receipter is discharged, if the debtor has the property.    7 *N. H. R.* 597, *Webster* vs. *Harper ;* 11 *Mass. R.* 215.

Where the receipter has permitted the debtor to hold and use the property as owner, the attachment is regarded as dissolved so far that the property may be attached by another officer, who has no notice that there is a prior attachment still subsisting.    5 *N. H. R.* 527, *Duncklee* vs. *Fales ;* 4 *Pick. R.* 398, *Bagley* vs. *White.*    But it is still in force for the security of the first attaching officer, until such second attachment be made ; and he may again seize the property by virtue of his first attachment.    He may take it from the possession of the debtor, as well as from the possession of the receipter.    Whether another officer, having notice not only that the property has been attached, but that the action is still pending, may, in all cases, on finding the property in the possession of the debtor, lawfully attach it on a writ in favor of another creditor, is a question still open to consideration.    12 *Mass. R.* 133, *Baldwin* vs. *Jackson ; Ditto* 495, *Train* vs. *Wellington ;* 16 *Mass. R.* 469 ; 13 *Pick. R.* 388.

For the purpose of vindicating his possession against wrong doers, the receipter is held to have a special property in the goods, and may maintain trover against one who takes them from him.    1 *N. H. R.* 294, *Poole* vs. *Symonds.*    But this special property is subordinate to a special property in the sheriff who made the attachment ; while the debtor has a general property, paramount to both, upon the payment and discharge of the debt.

Such being the general rights and liabilities of the parties, it is apparent that the sheriff, after committing the property to the custody of the receipter, who has permitted the property to go again into the hands of the general owner, cannot at-

tach it upon another writ without a new seizure.    11 *Pick. R.* 525, *Denny* vs. *Willard.*  Nor, in such case, can he hold the receipter responsible beyond the amount of the debts upon which it was attached prior to the time when the receipter parted with the possession.

It has even been held, in Massachusetts, that an officer who has permitted the property to go into the hands of a receipter, cannot return an attachment in another suit without an actual seizure, because the court there held that in such case he had no constructive possession.    9 *Mass. R.* 258, *Knap* vs. *Sprague.*

But the sheriff, if he retains possession of the property, may make a second attachment without any overt act.    16 *Mass. R.* 181, *Turner* vs. *Austin.*

And if he has committed the custody of the property to a receipter, we are of opinion that the possession of the receipter, so long as he retains actual possession, is to be so far regarded as the possession of the sheriff, that he may make a second attachment, without again seizing the property, by making a return of an attachment, and giving the receipter notice, with directions to hold the property to answer upon the second attachment also.    The sheriff, here, notwithstanding the receipt, has a special property in the goods ; retains, in law, the power to control them ; and may retake them into his personal custody.    1 *N. H. R.* 294; 2 *N. H. R.* 70, *Odiorne* vs. *Colley ; Ditto* 135, *Sinclair* vs. *Tarbox.*  In such case, the receipter having received the property from the sheriff, and being under contract to redeliver it to him, cannot part with the possession, even by letting it go into the hands of the debtor, and excuse himself by alleging that when he gave the receipt the property was attached only upon the first demand.    Another debt having been charged upon it, while it was in his possession and under his actual control, he is bound to hold it to satisfy that demand, or to return it to the sheriff, according to his contract, if he chooses to decline farther responsibility.    The receipter cannot, by

his possession of the property, prevent another attachment of it ; and so long as he has actual custody, he is so far the servant or agent of the sheriff, that there is no necessity of going through the formality of making another seizure, and taking another receipt. 2 *N. H. R.* 70. If the receipter is unwilling to incur farther responsibility, he may, upon such notice, decline to hold the property for the security of any other demand, and return it to the custody of the sheriff.

It appears in this case, that when the receipt was given by the defendant there was but one attachment upon the property ; that the property went back into the possession of the debtor ; and the debt upon which that attachment was founded was settled long before the demand by the plaintiff, upon the defendant, to redeliver the property, which was in October, 1833.

These facts constitute *prima facie* a sufficient defence to the action. And there is no sufficient evidence farther to charge the defendant. There is no evidence that the plaintiff returned an attachment on Howard's writ, and notified the defendant, while the property was in his custody. The plaintiff introduced no evidence, in answer to the evidence that the property, when the receipt was given, was held to satisfy but one debt, which had been settled. There is evidence, on the part of the defendant, that the plaintiff afterwards came to the defendant, and said he had come to attach the property, and asked the defendant if he would let his name stand on the receipt for this attachment also, and the defendant refused. There is no evidence that the defendant then held the property ; and that is a sufficient answer to this evidence. But if he then had the custody of the property, it might well be doubted whether the plaintiff 's enquiry, and the defendant's answer, without any thing farther, could be held as a notice to the defendant on which he could be charged. On this evidence the plaintiff, instead of giving a notice to the defendant requiring him to hold the property, asks him if he will do so, and the defendant refuses. If noth-

ing further was said, the defendant would not have understood that he was to be responsible for the amount of the second demand, also.

Under these circumstances, it is not necessary to consider the particular instructions to the jury, arising out of the contradiction of this evidence, by the witness on the part of the plaintiff.

*Judgment on the verdict.*