# YOUNG *vs.* WALKER.

Where a sheriff merely knows that property in the possession of a debtor has been attached, such knowledge will not prevent him from making a valid attachment.

But if he know that there is a subsisting attachment, and an unrescinded contract of bailment of the property, by another sheriff, and that the property is used by the debtor merely for his temporary convenience, he cannot attach it.

The mere use, by a debtor, of property attached, is not an entire dissolution of the attachment, so that no person can retain any rights under it, although such an opinion seems to be intimated in the case of *Dunklee* vs. *Fales,* 5 *N. H. Rep.* 527.

If a sheriff attach and deliver property to a bailee, upon his written agreement to re-deliver it on demand, and the debtor use the property for his temporary convenience, and the sheriff afterwards, the contract of bailment still existing, unrescinded, attach and sell the property upon another writ, a subsequent demand of the property upon the bailee, and an omission to deliver it, will not be evidence of a conversion.

TROVER, for a horse. It was agreed by the parties that the plaintiff, who was a deputy sheriff, on the 21st day of August, 1839, attached the horse in controversy, upon a writ in favor of Thomas Burleigh against Charles H. Butters,

as the property of Butters, at which time the horse was kept by Asa Gove, at the expense of Butters. The defendant, at the request of Butters, then gave the plaintiff a receipt for the horse, in the ordinary form, promising to deliver him on demand. From the time of the attachment, until the 18th day of October following, Butters used the horse as before, and in the course of that time had ridden him at several regimental musters, Butters having the rank of division inspector. On the 18th day of October aforesaid, the plaintiff attached the horse, which was still in the keeping of Gove, by virtue of a writ in favor of John L. Perley against Butters, and sold him upon the writ, according to the provisions of the statute, under the directions of Perley, and applied the proceeds of the sale to satisfy the execution which issued on the judgment afterwards recovered by Perley against Butters.

Burleigh also recovered judgment in his suit against Butters, and delivered the execution which issued thereon to the plaintiff, who, within thirty days from the rendition of the judgment, and after the sale aforesaid, made a demand on the defendant for the horse.

Upon these facts it was agreed that judgment should be rendered for the plaintiff, or for the defendant, according to the opinion of the court.

*W. C. Clarke*, for the plaintiff. This case is settled by that of *Dunklee* vs. *Fales*, 5 *N. H. Rep.* 527, in which it is decided that if the bailee of goods attached permit them to go into the possession of the debtor, the attachment will be, with respect to other creditors, *ipso facto*, dissolved. And the cases of *Bagley* vs. *White*, 4 *Pick.* 395, and *Carrington* vs. *Smith*, 8 *Pick.* 419, cited in the opinion of the court, show that the property must be kept away from the possession of the debtor, or the attachment will be lost.

The only doubt that can be raised in this case, is, whether the same officer can take the property out of the possession

of the debtor, and sell it, upon one writ, and then maintain trover against the bailee, on the ground that the attachment was dissolved, and the property applied to pay another debt. But this can make no difference to the defendant. If the attachment be dissolved, as it certainly was here, it will be immaterial to him whether the same or another officer sell the property. Here, Perley having the right to attach the horse, the officer was bound to obey the command in the writ. 1 *Chitty's Pl.* 344 ; *Howe's Practice* 134.

*Lyford,* for the defendant. The writs against Butters were both returnable at the same term, and were both in the hands of the officer at the same time, and the horse was under the control of the officer. It was evidently the intention of the parties to defraud the defendant, by making him liable for the value of the horse, after it had been applied by the officer in satisfaction of Perley's debt. It does not appear that the horse was used by Butters with the assent of the defendent, after the first attachment ; nor that it was not so used with the assent of the sheriff ; nor that it was not always kept at the expense of Butters. We have a right to presume that the officer knew and assented to every thing that was done by Butters ; and it does not become him to assent to the use of the horse by Butters, and then say that such use dissolved the attachment.

*Bartlett,* on the same side. Where there are conflicting attachments, the second is valid only on the ground that the first has been released. Where the attachments are made by different officers, then only can a question arise as to the validity of the first.

But here the officer knew, in point of fact, that the first attachment had not been released. He had no right to presume that it was released, merely because the horse was used by Butters, because that presumption would be against his better knowledge. You cannot take the ground, in a

Young *v.* Walker.

case like this, that the officer had a right to presume that the attachment was released, when he knew that it was not released.   The officer here attempts to charge the defendant for the non-performance of a duty which this very officer has rendered it impossible for him to perform.   This is not only inequitable, but it conflicts with the familiar principle of law, that a party shall not charge another with a breach of a contract, when that breach has been caused by his own act.

GILCHRIST, J.   It is contended that the use of the horse by Butters, from the time of the first to the time of the second attachment, was *ipso facto* a dissolution of the first attachment.   The case of *Dunklee* vs. *Fales, 5 N. H. Rep.* 527, is often referred to as an authority in favor of the position, that wherever goods attached are permitted to return to the possession of the debtor, the attachment is *ipso facto* dissolved, so that any other creditor may attach and hold them.   Indeed, such is the language of Richardson, C. J., in pronouncing the judgment of the court.

It may be well to enquire, what was the precise question in *Dunklee* vs. *Fales,* and what point it was necessary to decide.   In that case, the property of Taylor was attached and bailed to the plaintiff, who locked it up in a chamber in Taylor's house, the key of which he retained.   He afterwards gave the key to Taylor, who used the property as before the attachment.   It was then attached upon another writ against Taylor, by the defendant, Fales, who removed it, and thereupon Dunklee brought an action of trover against him.   The second attaching creditor had notice that a previous attachment had been made.

The question, therefore, was whether, when goods attached are found in the possession of the debtor, another creditor, who knows that an attachment of them has been made, may, by another officer, attach and hold the property.   The judgment of the court was, that he might, and that conclusion

settled the case.    The language used by the court is : " the
attachment is *ipso facto* dissolved, so that any other creditor
may attach and hold them." It was unnecessary to go far-
ther, or to determine whether the attachment were dissolved
as to all persons.    Now, what is meant by the words *ipso
facto*, in this connection?    If they mean only, that by the
fact itself of permitting them to return into the possession
of the debtor, the attachment is so far dissolved that another
creditor may attach them, it is well enough, for the words
mean no more than that.    They have, of themselves, no
peculiar significance beyond that which may be expressed
by their literal translation into English.    But if the court
intended to convey the idea that in all cases where the debtor
should be permitted by the bailee to regain possession of the
goods, the prior attachment would be dissolved *in toto*, so
that no person could retain any rights under it, we think the
position too broad.    Such, however, is the ground taken in
the argument, but it is inconsistent with the principles re-
cognized by this court in various decisions.    We have settled
that, notwithstanding the bailment, either the sheriff or the
bailee may maintain an action for the property ; the former,
because of his special property and right of possession ; the
latter, because of his special property and actual possession.
*Poole* vs. *Symonds*, 1 *N. H. Rep.* 289.    The sheriff may,
at his pleasure, re-take the goods into his actual custody,
*Odiorne* vs. *Colley*, 2 *N. H. Rep.* 70 ; and this power he
possesses, even when his bailee has permitted the property
to go into the possession of the defendant. *Sinclair* vs. *Tar-
box*, 2 *N. H. Rep.* 135 ; *Whitney* vs. *Farwell*, 10 *N. H.
Rep.* 9.    The attachment, then, is not entirely dissolved,
merely because the property goes into the hands of the
debtor ; for, if it were, the sheriff could not reclaim it, as
he may do now.    Nor is the mere fact that the debtor has
used the property, enough, according to very respectable au-
thorities, to vacate the attachment.    In *Baldwin* vs. *Jack-
son*, 12 *Mass.* 131, where property attached was put into

Young *v.* Walker.

the possession of a boarder in the debtor's house, and the debtor was permitted to use it, but there was no design to cover the property by a pretended attachment, it was held that the attachment was not dissolved as to a second attaching creditor, who knew of the first attachment. And in *Train* vs. *Wellington,* 12 *Mass.* 495, it was held that the use, by the debtor and his family, of goods attached, by permission of the officer, or his servant, did not dissolve the attachment. Analogous to these cases is that of *Latimer* vs. *Batson,* 6 *B. & C.* 652. There, goods were sold under a *fieri facias,* and the creditor took a bill of sale of them from the sheriff, and sold them to B., who put a man into possession; but the goods remained in the debtor's house, and were used by him, as before. It was held, that if the jury believed that B. *bona fide* purchased and paid for the goods with his own money, the sale was good, though the debtor used them, against a seizure by another creditor; Abbott, C. J., remarking, that possession was much to be regarded, but that was with a view to ascertain the good or bad faith of the transaction.

The mere fact, then, that the property is used by the debtor, would not seem to be enough to dissolve the attachment, so that another officer could acquire a lien upon it, particularly where he knew there was a subsisting attachment. The knowledge must, it is true, extend beyond the fact that the goods had been once under attachment. What act, what species of possession, and what degree of vigilance, will constitute legal custody, is often a question of difficulty, depending on a variety of circumstances, having respect to the nature and situation of the property, and the purposes for which custody and vigilance are required; and especially, to the notice to other officers, and persons having conflicting claims. *Sanderson* vs. *Edwards,* 16 *Pick.* 144. But where goods attached were put into the debtor's store, but the sheriff did not keep the key, and had no control over the store, nor any possession by any one as his servant, for thirty or forty days

after the goods were put there, the attachment was held to be lost, as against another officer, who knew these facts. *Bagley* vs. *White,* 4 *Pick.* 398. And where the property is in possession of the owner, and there is no evidence of any attachment upon it, it is liable to be attached by any officer ignorant of a prior attachment. *Bruce* vs. *Holden,* 21 *Pick.* 190. But where the sheriff takes the key of the store where the goods are, though no keeper be placed over them, yet a second officer, knowing of the first attachment, cannot attach them. *Denny* vs. *Warren,* 16 *Mass.* 420. And it is a question of fact, whether the first attaching officer have abandoned the attachment, or have conducted so negligently as to forfeit his rights. *Gordon* vs. *Jenney,* 16 *Mass.* 465.

The cases referred to show that wherever there are conflicting attachments, the knowledge by the officer that the goods have been attached has an important bearing upon his rights. On this point the principles deducible from the cases seem to be these : Where the officer finds property in the possession of the debtor, the mere knowledge on his part that the property has been attached will not prevent him from making a valid attachment of it. This was all the knowledge possessed by the defendant in the case of Dunklee *vs.* Fales. But if he know that there is a subsisting attachment, and an unrescinded contract of bailment, although the debtor might at the time have the possession of the property, he cannot acquire a lien by attaching it. And these principles are not unreasonable. If the officer find property in the possession of the debtor, and know only that it has once been attached, he might well presume that it was there, because the suit had been compromised and the attachment dissolved. But if he know that the attachment and the bailment still subsist, and that the property is in the hands of the debtor merely for his temporary convenience, he will not be misled, and can make no such presumption.

If these principles be correct, in cases where attachments

are made by different officers, they will apply with still greater force to the case before us. There is not a single fact which might enable another officer to make a valid attachment of which this plaintiff can avail himself. In the first place, while he held the defendant's contract to deliver the horse to him on demand, he seized and sold the horse upon another process, without making any demand on the defendant. This is a plain rescission of the contract of bailment; a more unequivocal one cannot be imagined. In the second place, he knew that the debt had not been paid; that the attachment had not been dissolved; that the horse was used by Butters merely for his temporary convenience, and that at the time the horse was seized and sold, there was an unrescinded contract of bailment in his hands. None of the circumstances, then, exist which would authorize an attachment, even by another officer.

The plaintiff is met, also, by another difficulty. This is an action of trover, and a conversion must be proved. But the defendant has not converted the property. The sale was by the plaintiff, and that before any demand was made upon the defendant, and while the horse was still in the keeping of Gove. The plaintiff has seized and sold the horse, so that the defendant could not deliver him, and now brings his suit because the defendant has not done that which the plaintiff has rendered it impossible for him to do, and which he might have done, had it not been for the act of the plaintiff. Upon no ground, therefore, can the action be maintained.

It may be said, that as this suit was brought to enforce the lien created by the first attachment, this result is a hardship upon the first attaching creditor. But the care of his rights was entrusted to the plaintiff, his agent; and if that agent have so conducted as to sacrifice any of those rights, the creditor has his remedy against him. It does not follow, because this suit cannot be maintained, that the benefit of the first attachment must be lost. The course, however,

necessary to be pursued by the creditor, is not to be inquired into in this case. But the plaintiff cannot be permitted, as the second attaching officer, to say that the first attachment was dissolved, because he, as the first attaching officer, or his agent, had permitted the property to go into the possession of the debtor, to apply the proceeds of the sale in satisfaction of the second debt, and then call on the defendant for the value of the property, to satisfy the first debt. The property should not be made to perform this double duty, at the expense of the defendant. It was not necessary for the plaintiff to pursue the course he adopted. Under the first attachment, he might have taken the horse from the possession of the debtor, as well as from the possession of the receipter, (*Whitney* vs. *Farwell,* 10 *N. H. Rep.* 9 ;) and it might then have been sold to satisfy the debts in the order of the attachments.

Nor has the second attaching creditor any reason to complain. All the facts relating to the transaction were known to the plaintiff, his agent, and notice to the officer is notice to the creditor in such case.

*Judgment for the defendant.*