## ISAAC BISSELL, jr. *vs.* ZIBA HUNTINGTON.

After an attachment of property, if the sheriff deliver it to a third person on his receipt to account for the same, and the engagement is not fulfilled, the sheriff ought, in an action upon the receipt, to take judgment for the full value of the property.

If the property has not been returned to the debtor, and the sheriff takes judgment for less than its value, he is liable to the debtor in a special action on the case for the deficiency.

But he is not liable to him in an action of trover, if the debtor assented to the receipt of the property, and no tortious act has been committed upon it. Such assent justifies the sheriff in a delay to account for the property till judgment is recovered against the receipter; and if then he still delays to endorse it upon the creditor's execution, a remedy exists for the debtor, but it is not trover.

The acts of a sheriff, when performed in good faith, are to receive the most favourable construction.

THIS was trover for two horses.

The action was commenced August 15th, 1817, and at the trial here November term, A. D. 1818, it appeared in evidence, that the defendant was a deputy sheriff, and in February 1816, by a writ of attachment against the present plaintiff, in favor of one *Davenport*, seized and moved the horses in controversy. On the same day of the attachment, the horses were at *Bissell's* request delivered to *James Poole*, and his receipt taken for the safe custody and re-delivery of them to the present defendant on demand.

The writ of attachment against *Bissell* was prosecuted to judgment, and at the November term of this court in A. D. 1816, the sum of $130 recovered.

The property, which had been attached, was then duly demanded of *Poole*; but, not being delivered, a suit was instituted against him in February 1817, upon the receipt and judgment recovered at the May term of the same year.

As one of the horses, however, had before judgment, been returned by *Poole* to *Bissell*; and as the whole amount of the claim on which they were attached, had then become only

$134 22, the present defendant took judgment against *Poole* only to that amount, though it was now admitted, that the horse, which remained in *Poole's* custody, was actually worth over $150.

It also appeared, that the defendant neglected to discharge the execution against *Bissell*, till January A. D. 1818 ; but it had always been in his custody and no attempt made to collect it of *Bissell*.

Whether the money had actually been paid by *Poole* to the present defendant till that time, or whether the creditor had previously been settled with by *Poole* or by the deputy sheriff, did not appear.

On these facts a verdict was taken by consent for the defendant, subject to future consideration.

*W. Smith & J. Smith*, for the plaintiff.

*J. Bell*, for the defendant.

WOODBURY, J. *pro curia*. In this case we are satisfied, that the defendant erred in not taking judgment for the full value of that horse, which had not been returned by the receipter to the present plaintiff. Because, although the full value of that horse was not wanted by the creditor, yet the debtor's rights ought also to be protected ; and he was entitled after satisfaction of the debt, to have the residue of the full value of his property returned to himself.

Moreover, it is obvious that in cases like the present, the debtor has no remedy for this error, except by an action against the sheriff. Because the sheriff has the legal custody of property, which has been attached : he is accountable for it to both parties : if a person, to whom he entrusts it, commits a tort, by withholding it, he can sustain against him an action of trover.(1)  The recovery in such an action (1) 1 N. H. vests the title of the property in the wrong doer, if the property has not previously been returned ; (*Strange* 178, 1078. —*Cro. Ja.* 74.—*Bac. Ab.* " *Trespass,*" *A.*—5 *John.* 348.— 6 *Do.* 168.—1 *N. H. Rep.* 189.) and that recovery is a bar to any subsequent action against the wrong doer by the debtor.  1 *N. H. Rep.* 189, *St. Clair vs. Chesley, and authorities*

(1) 1 N. H. Rep. 292.

*there cited.—Vide etiam,* 2 *Bl. C.* 396.—1 *Chitt. Pl.* 48.—13 *Coke* 69.—13 *John.* 561.

There may, also, have been another error in the proceedings of the defendant. Because if he actually collected the judgment against the receipter, or was able to have collected it before January, A. D. 1818, he ought to have appropriated it in discharge of the execution against the present plaintiff.

How that fact was does not appear ; but, on the probable hypothesis, that he had collected it, the debtor suffered no injury by the delay to endorse it on the execution, as he was not otherwise called upon to pay the debt.

If the defendant neglected to return the execution, or if he returned and renewed it after the money was collected, the debtor, though not perhaps actually injured, would however be left in uncertainty as to the fate of his property, and for the breach of duty in the officer, would probably be entitled to a special action upon the breach.

But whatever redress may belong to the plaintiff for any of these errors by the defendant, we think the facts in this case do not justify an action of trover. To support that action, " a mere non-feazance," or " mere negligence is not sufficient." " There must be a positive tortious act."(1)

(1) 2 Bos. & Pull. 439, Bromley *vs.* Coxwell.

Thus a mere neglect to deliver property, or carelessness in the management and sale of it, will not support trover ; but there must be a destruction of the property, or a positive exercise of power over it without authority.

Hence it is that an actual demand of the property is so often necessary to maintain this action ; because a refusal in such case to deliver it, when the defendant has no right to its custody, is evidence of a wrongful exercise of power over it, or in other words is evidence of a " tortious act."

The prosecution of the receipter in this case for his wrongful detention of the property, and the transfer of the title of it to him by the judgment, constitute the only mode in which property in the custody of the law, can be sold by the sheriff except at the post.

His right to transfer the title in this way to a trespasser, grows out of the necessity of the case ; or, in other words,

results from his special interest in the property, and his duty to protect it for both parties against all wrong doers.

In the present case there was, also, an express assent by the plaintiff to the delivery of the property to *Poole ;* and consequently, an assent to all the usual and incidental measures, adopted to vindicate the rights, which grew out of that bailment.(1)

Under these circumstances, therefore, it cannot be seriously contended, that the error of the defendant in taking judgment against *Poole* for too small a sum was a " tortious act," or in any way a conversion of the property.(2)

The argument is not, that here was an insufficient claim of power over the property, to constitute one ingredient in conversion.   2 *Saund.* 47, *f. note.*—6 *Mod.* 212.—5 *East.* 540.—7 *John.* 257.—8 *ditto* 445.

But that the claim was rightful and the error of the defendant only an act of " mere negligence" as to the price for which the property was sold. If this error was deemed a " positive tortious act," it would follow, likewise, that the whole proceedings as to the receipter are void ; the judgment itself a mere nullity ; and *Poole,* as well as the defendant, still liable in this form of action.

The attempt to support this form of action on other grounds and for other errors, committed by the defendant, must fail for similar reasons.

Thus, though the power of a sheriff over property, which has been attached, generally terminates thirty days after judgment ;(3) or soon as he can conveniently sell the property, after four days from the seizure of it upon execution ;(4) yet a sale at a later period is probably not a tortious act in respect to the *debtor ;* because, till the execution is paid, his property may be seized anew and sold under the re-seizure. 9 *John.* 99, 385.—3 *Mass. Rep.* 487.—6 *ditto* 23.—1 *Maul. & Selw.* 712.

We speak not now of the paramount rights of other creditors, who, after a delay to sell in due season, may have levied on the property.   14 *John.* 222.—1 *N. H. Rep.* 295. —5 *Mass. Rep.* 699.

19

(1) 4 Wheaton 316, M'Cullock *vs.* the state of Maryland.

(2) 3 Taunton 117, Dufresne *vs.* Hutchinson.

(3) 1 N. H. Laws 102. (4) 1 N. H. Rep. 294–5.

Be the rule as it may, however, in most cases as to debtors, the *debtor* in this case cannot complain of the delay ; because it grew out of the wrong of a third person ; because that third person was approved by himself as a receipter, and was prosecuted by the defendant with reasonable despatch ; and lastly, because this mode of passing the title to a wrong doer does not require, that the title shall be passed any earlier than it can be effected by the usual progress of a suit against him to judgment. For the same reasons, it must be apparent, that the power of the sheriff over the property, to be exercised in this way, must continue till judgment against the wrong doer, whether that be more or less than thirty days after judgment against the original debtor. After judgment recovered against the wrong doer, the sheriff is certainly justified, under similar principles, in applying the proceeds to discharge the demand on which the property was originally attached ; and if that application be delayed till the demand is otherwise paid, or if the execution in the mean time be withdrawn from his custody, the sheriff is liable to the debtor for the money collected of the wrong doer, but not in an action of trover.

We should regret the necessity, imposed upon us by technical principles, to turn the plaintiff round to another form of action, if his case upon the merits was without suspicion, and if those merits would by this course be endangered. But whatever merits may belong to the case will remain unaffected ; and it cannot be winked out of sight, that the receipter in this case was selected by the plaintiff himself; that so much confidence existed between them, a portion of the property was very soon returned to the plaintiff; and, unless, when demanded, the horse in controversy was detained from the sheriff for the accommodation in some way of this plaintiff, it is difficult to account for the refusal to deliver him up ; that judgment, as is usual in such actions, was taken for only the amount of the creditor's claim ; that the defendant derived no benefit from the difference between that amount and the value of the horse ; and, if the difference was in fact greater than the expense of keeping, that this would proba-

Bissell
*vs.*
Huntington.

bly have been adjusted between the plaintiff himself and the receipter of his own choosing.

Under these circumstances the defendant appears to have conducted with good faith ; and it ought distinctly to be understood, that when sheriffs thus behave, neither the court, the bar, nor the public should favor prosecutions against them for petty mistakes, occasioned, as they often are, by the imperfect advice of some, who enlist against them.(1)

Under these circumstances, too, the plaintiff appears to have a case of questionable merits ; and if this be only another vexatious attempt to catch in the snares of rigid practice a class of men, whose sufferings, for some years, seem, by the records in this county, to have been extreme, it ought to be understood, that all such attempts must fail, unless supported by such inflexible technical principles, that justice would be more jeopardized by their breach than their observance.

These remarks are not made to prejudice the present cause, if presented to us hereafter in a different shape and with proper explanations of some doubtful circumstances.

But we drop them to make known our rules of construction in these cases, and, if possible, to counteract an opinion, whose origin we do not attribute to this county, that sheriffs and their deputies, so far from being persons in employments, both hazardous and difficult, and whose unintentional errors are consequently often to be mitigated or forgiven, are rather mere beasts of prey, and are to be hunted down with the " hue and cry" of the whole community.

*Let the verdict be set aside, and the plaintiff become nonsuit.*

(1) 1 N. H. Rep. 86.— 1 Wm. Bl. 206.