# GRAFTON,

## JANUARY TERM, A. D. 1844.

## KITTREDGE *vs.* WARREN.

An attachment of property upon mesne process, *bonâ fide* made, before any act of bankruptcy, or petition by the debtor, is a lien or security upon property, valid by the laws of this state; and thus within the proviso of the second section of the bankrupt act of August 19, 1841.

The attachment being saved by the proviso, the means of making it effectual are also saved; and the certificate of discharge of the bankrupt cannot, when pleaded, operate as an absolute bar to the farther maintenance of the action. If so pleaded, the plaintiff may reply the existence of the attachment, in which case a special judgment will be entered, and execution issued against the property attached.

ASSUMPSIT. The case came before the court, upon a statement of facts, from which it appeared that the writ was made returnable at the September term of the common pleas, A. D. 1842, was duly served by an attachment of the property of the defendant, and was entered and continued to the February term, 1843.

Subsequent to the attachment, the defendant filed his petition to be declared a bankrupt, and received his discharge previous to the February term of the C. C. P., 1843. At that term he pleaded his discharge in bar of the plaintiff's suit. To this plea the plaintiff replied, that he had attached property of the defendant, upon the writ, previous to his filing his aforesaid petition in bankruptcy, and alleged that said attachment was a lien, or security, valid by the laws of this state, and not affected by the bankrupt act, and prayed judgment against the property attached.

To this replication the defendant demurred, and the plaintiff joined in the demurrer.

Upon this statement of facts, and pleadings, it was agreed by the parties that the foregoing case should be transferred to this court for decision. If the court should be of opinion that an attachment *bona fide* made previous to the filing of the petition to be declared a bankrupt, is a lien, or security, valid by the laws of this state, and not affected by the bankrupt act, judgment to be rendered for the plaintiff against the property attached; otherwise, judgment to be rendered for the defendant.

*Duncan*, for the defendant, cited *Ex parte Foster*, 5 *Law Reporter* 55.

*Kittredge*, *pro se*, argued that an attachment is a lien. It has been so called by the courts in this state. 5 *N. H. Rep.* 528, *Dunklee* vs. *Fales*; 7 *N. H. Rep.* 427, *Kittredge* vs. *Bellows*; 10 *N. H. Rep.* 236, *Clark* vs. *Morse*. It is so called also in the statutes of the state. *N. H. Laws* (*Ed.* 1830,) 106. And the forms prescribed for summons to defendants recognize it as such, by saying that the property of the defendant is attached as *security*, &c. *N. H. Laws* 85. He contended that *Foster's case* did not assert that an attachment is not a *statutory lien*; and to show farther that it is so, referred to *Cook's case*, 5 *Law Reporter* 443, and to *Haughton* vs. *Eustis*, 5 *Law Reporter* 505.

PARKER, C. J. The defendant, in his plea, relies upon the act of Congress of August 19, 1841, and upon certain proceedings in bankruptcy, resulting in his discharge under that act, as a bar to the farther prosecution of this suit.

No exception has been taken by the plaintiff to the constitutionality of the act; and the agreement of the parties seems to exclude him from raising a question of that character, in this court. Were we disposed to raise a question of

that description for our own consideration, it would be found-ed upon the fact, that the act provides no common tribunal for its interpretation, but gives final jurisdiction, in matters directly arising under its provisions, to between thirty and forty district and territorial courts, unless the district judge see fit to adjourn questions into the circuit court, and in those cases leave the final interpretation to each of nine different circuit courts. No provision is made for appeals, (except by the bankrupt, on a question of discharge,) or for writs of error. And the general laws, regulating the jurisdiction of the courts of the United States, seem not to be applicable to cases arising under the act. It has been settled that the dis-trict judge does not sit in questions in bankruptcy adjourned into the circuit court, and consequently the points adjourned cannot be brought before the supreme court by a certificate of division of opinion. Nor will an appeal, or writ of error, lie from the decisions of the circuit court. 1 *Howard's Sup. C. R.* 265, *Nelson* vs. *Carland.* Mr. Ch. J. *Taney,* who dissented from that part of the opinion excluding the district judge from sitting as a member of the circuit court in cases of that character, concurred in the result, upon the ground that the act of Congress of 1802, authorizing a certificate of division, did not apply to the summary jurisdiction to be ex-ercised in cases in bankruptcy. There is, therefore, no com-mon arbiter provided for the interpretation of the act, no tribunal having any direct jurisdiction to revise and correct the decisions of the district courts generally, and none to exercise a controlling influence over the proceedings of the circuit courts.

The constitution of the United States provides, that Con-gress shall have power, among other things, to establish uni-form laws on the subject of bankruptcies, throughout the United States. To come within the constitutional provision, any law on the subject must be an uniform law throughout the United States. A law which prescribed one rule in one circuit, and a different one in another, could not be regarded

as an uniform law, or its passage as within the constitutional power of Congress. And the question may well be asked, whether a law which gives final jurisdiction to nine different judicatures, exercising independent authority in as many different circuits, (to say nothing of the final jurisdiction of district courts, or those of the several territories, and of the district of Columbia,) can in its practical operation be an uniform law, notwithstanding the words in which it is expressed are every where the same ? The signification of words is not so determinate and well settled, as to afford a reasonable belief that any act containing complicated provisions, could, under such circumstances, receive an uniform construction, or have an uniform operation. If it is not a matter of absolute necessity, that the same clauses should in one circuit receive one construction, and in others a different, and perhaps an opposite one, it certainly would need no spirit of prophecy to assure any one that such would inevitably be the result. None of the decrees, or judgments, founded on these different views, can be held erroneous by any power having a direct authority to reverse them. Each decision, therefore, must stand, as furnishing, in connection with the statute, the true rule of law within its own circuit, except so far as the questions may happen to be reached, incidentally, by the supreme court, through the action of the state courts, or through some proceedings in the circuit or district courts, other than those provided for the administration of the act itself. Even in cases which may reach that court, in that mode, and by means of which an opinion may be obtained upon some of the provisions of the act, no decision can operate as a reversal of the judgments and decrees of the district and circuit courts, entered in bankruptcy, which will still stand as final determinations of the law for each particular case.

Reasoning *a priori,* therefore, there is at least room for a plausible argument, that the law does not consist merely in the words and syllables out of which the statute is constructed, but in the rule to be deduced from the true meaning and

interpretation of them ; and that a common tribunal to construe, interpret, and decide, in the last resort, is essentially necessary to uniformity of interpretation and operation, and therefore to the uniformity of the law itself. The experience which has come *a posteriori*, in relation to this particular act, has certainly not served to weaken the force of the argument; the decisions in the different districts and circuits, having presented a most distressing diversity of opinion respecting the construction of its provisions, and even respecting the constitutionality of the act itself, upon other grounds than those here suggested. It must be admitted, that this experience has had a strong tendency to exemplify and sustain an assertion, sometimes made, that a statute, until it has passed the ordeal of judicial examination and decision, is even more uncertain in its provisions than the common law itself; to which it might be added, that an act, where many different tribunals have each a final right of interpretation, is in danger of becoming more and more uncertain, the more decisions upon it are multiplied.

It is no part of our purpose, however, to follow out the argument which thus presents itself, or to express an opinion upon the weight which might ultimately be found due to it. It is sufficient that its consideration belongs more appropriately to some other tribunal, and that we may pass it over upon this occasion, and content ourselves for the present, as we very cheerfully do, with the assumption, that the statute is a constitutional exercise of the powers of Congress.

The general question presented by the pleadings is, whether the matter of the replication furnishes a sufficient answer to the plea, so as to entitle the plaintiff to the judgment which he prays for ?

It is not the least among the evils of the state of things already adverted to, that the courts of the several states have, thus far, no certain guide to aid them in the construction of such provisions of the act as may come incidentally in controversy before them ; for the decisions of the circuit courts,

although they may furnish a rule for the final decision in the particular cases before them, cannot furnish a rule of construction for others, especially when they disagree. Our duty at the present time, however, although it necessarily leads us to the examination of the entire statute, requires us to place a construction upon but a very limited portion of it.

It is by no means necessary for us to inquire what is the policy of a bankrupt act in England—what should be the true construction of one, in relation to securities existing at the time of its passage, where no particular provision is made respecting them,—or what must have been the operation of the present act, upon the case before us, had it not contained the proviso in the second section.

It certainly admits of argument, that, even without any saving clause, the true construction of the act must have been, that it did not operate to defeat mortgages, pledges, particular liens, and other securities, held by creditors, at the time of an act of bankruptcy, or of a petition by the debtor for that purpose, so long as the creditor did not attempt to avail himself of its provisions, by proving his debt under the commission. Even if Congress, by the authority to pass bankrupt laws, may be supposed to possess the power to abrogate and annul vested rights of that character, fairly acquired before any act of bankruptcy, and before the passage of the act itself; it would be somewhat remarkable, should an attempt be made to carry such a power into execution, for the sake of an equal distribution of the property among creditors who had not exercised equal care and diligence; and it would be most astonishing if a provision should be made, by which such rights might be defeated, at any time, at the pleasure of an insolvent debtor, merely by filing his petition in bankruptcy.

But there is no occasion for us to enter at large into this discussion. The act, after enacting in the second section that future payments, securities, &c., made in contemplation of bankruptcy for the purpose of giving a preference over

the general creditors, and all other payments, securities, transfers, &c., made in contemplation of bankruptcy, to persons not *bona fide* creditors, or purchasers for a valuable consideration without notice, shall be void and a fraud upon the act, and that the assignee shall be entitled to claim the same as part of the assets, &c., has a proviso, 'that nothing in this act contained shall be construed to annul, destroy, or impair, any lawful rights of married women, or minors, or any liens, mortgages, or other securities on property, real or personal, which may be valid by the laws of the states respectively, and which are not inconsistent with the provisions of the second and fifth sections of this act.'

It will be sufficient, upon this occasion, to ascertain the true interpretation and meaning of this proviso, in its application to the case before us. The attachment upon which the plaintiff relies, does not appear to be within the condemnation of that part of the second section of the act, preceding the proviso, which renders void, payments, securities, transfers, &c., in contemplation of bankruptcy. There is no denial that the plaintiff is a *bona fide* creditor, nor any suggestion that his attachment was not fairly and duly made, according to the laws of the state, before any act of bankruptcy. Nor is there any room to contend that the attachment or the prosecution of this action is inconsistent with the fifth section of the act. No suggestion is made, and the pleadings admit of none, that the plaintiff has proved his claim, or sought any dividend, under the proceedings in bankruptcy. If an attachment *bona fide* made, in pursuance of the law of the state, before any petition or act of bankruptcy, where the creditor is duly proceeding to judgment in the action in which the attachment has been made, is within the scope of the proviso, it is expressly saved from the operation of the act by the terms of the proviso itself. And if this saving clause is not broad enough to include it, we can hardly hold it excepted by any general principles, applicable to acts of this character.

If it was in any way important to the decision, it might here be remarked, that in ascertaining the intent and meaning of this proviso, it will not be safe to reason from the provisions and construction of the bankrupt laws of England; nor from any preconceived notions of what a system of bankruptcy ought to provide, in disposing of the property and effects of the debtor among his creditors. If an opinion might be entertained that a system which should not only discard all preferences by the bankrupt himself, but should prevent creditors from obtaining any *in invitum*, was, abstractly considered, the best; that can have little if any weight in determining the true construction of the act now in question. The peculiar character of the government from which the law emanated—the situation of the people on whom it was to operate, divided as they are into many different communities, each having its peculiar laws for the security and collection of debts, which a bankrupt law must interfere with, to a greater or less extent—and the influences under which this law must have been matured, derived from considerations of this character, must demand the careful consideration of any one who is required to ascertain its true intent and meaning, and must press particularly upon his attention, in giving a construction to that part of it which is involved in the present decision. An early exercise of this power to pass laws upon the subject of bankruptcy, was of but few years' duration; and from 1803 to 1841, all efforts to procure the passage of another act upon the subject were fruitless. It was settled by solemn adjudication, that state insolvent laws could not supply, by their operation, the place of a bankrupt law, passed under the authority of the constitution of the United States; and the appeals to Congress for the passage of such a law were of the most urgent description, but a disinclination to act at all upon the subject, combined with a failure to mature a system satisfactory in its details, prevented, for this long series of years, any effectual action upon this important branch of the powers of the gen-

eral government. It may be assumed, that this was not owing to a general dislike of a system which provided, to a certain extent, for a *pro rata* distribution of the property of an insolvent debtor among his creditors, for many of the states have insolvent laws, with provisions of that character, and in others there is a strong feeling in favor of their general principle. But one strong reason, among others, why Congress so long forbore to exercise their power upon this subject, is believed to have been the disturbing influence which such a law must almost necessarily have, in the local legislation and jurisprudence of the several states. And the same reason, it is supposed, has contributed in no small degree, to the repeal which has followed so hard upon the enactment of the act of 1841. This state legislation, under some limitations not important to the present inquiry, comprises nearly all the legal enactments relating to the collection of debts, and regulating the rights and remedies of debtor and creditor ; and any law of Congress upon the subject of bankruptcy, could hardly fail to have reference to this state of things, and for these reasons to contain provisions not to be found in the English system of bankruptcy, and which, perhaps, it would not be thought expedient to adopt in a system of insolvency, to be matured under circumstances of a different character. But however much considerations of this character must naturally press upon the attention, and however much they might weigh in a case of doubtful construction, they do not seem to us to be material to the determination of this case. We find in the proviso already recited, that the act was expressly framed with especial reference to the local laws of the several states, respecting the securities held by creditors, while their remedies, beyond a certain extent, are taken away, except through the medium of proceedings under the act itself.

The act attempts but in part, to specify in terms, what shall be exempted from its operation. For the rest, reference is made to the laws of the several states. Whatever is a valid

lien, or mortgage, or security, by those laws, that is exempted by the express language of the act. It would seem to be obvious, then, that the extent and operation of the proviso, in this particular, are to be determined by an inquiry what is a lien, or mortgage, or security, by the local law. The general policy of a bankrupt law has nothing to do with the construction of this part of the act, because the act itself refers to the laws of the several states, framed, perhaps, without reference to the policy of a bankrupt law, as the means of determining what is a lien, or security, and exempts such lien or security. It is hardly necessary to say that we are not here speaking of securities taken after the passage of the bankrupt act itself, and which come within the express condemnation of other parts of it, as mortgages, &c., executed after its passage, in contemplation of insolvency. Cases of that description, although they might be valid by the local law, may not be within the scope of the proviso. It is not necessary to pursue that here.

The exception is not of liens, known to the common law as such, nor is any attempt made to limit this part of the subject, by any specification of what is to be considered as constituting a lien. If there is any right, or any existing state of facts conferring any right upon a creditor, by the law of any particular state, and there known to the law as a *lien*, that right, or security, or by whatever other term it may be designated, is there saved to the creditor, and exempted from the operation of the act, by the force of the proviso.

We come, then, to the question, whether an attachment is a lien, or security, by the laws of this state. In considering this question, we may refer, of course, to the provisions of the common law, to our own statutes and practice, and to decisions elsewhere, as in other cases, where we are required to construe and determine the laws of this state.

It is not material, at this time, to inquire in what precise manner the attachment upon mesne process, peculiar in some measure to New-England, was originally introduced. It

seems to have been, at first, but a means of compelling the appearance of the defendant, or at least such was supposed by some to be the extent of it. But in the colony of Massachusetts Bay, as early as in 1650, 'upon information of some inconveniences accrued, and more that may accrue to several persons, that men take themselves acquitted and free from all legal obligations in case of appearance in courts according to the express terms of the bond, or at most, if the principal there stay till verdict and judgment be given; which if they be, they may then make away their estates, or absent their persons before the twelve hours be expired for granting execution,' it was enacted, ' that henceforth all goods attached upon any action, shall not be released upon the appearance of the party, or judgment, but shall stand engaged until the judgment or the execution granted upon the said judgment be discharged,' &c. *Charters and Colony Laws* 50. A proviso was added in 1659, ' That henceforth in all civil proceedings, (except in cases where the defendant is a stranger,) where execution is not taken out and executed within one month after that judgment is granted, all such attachments, whether on persons or estates, with sureties, shall be released and void in law;' 'unless the court that granted the judgment shall see cause to give further time, and respite of execution in any particular case.' *Charters, &c.* 193. During the period in which these enactments were made, and long afterwards, New-Hampshire was united to the Massachusetts colony. Upon the separation in 1680, one of the first acts of the assembly of this province provided, that the laws they had formerly been governed by, were to be a rule in judicial proceedings, ' so far as they will suit our constitution, and not be repugnant to the laws of England,' until others were legally published.

Among the earliest printed laws of this province, is an act passed in 1701, for regulating trials in civil causes, which, after certain provisions for holding the defendant's body, contained the following clause respecting attachments, viz.:

'Nor shall any goods or other estate attached to respond the judgment that shall be recovered on suit brought, be released or discharged from such arrest until the expiration of thirty days next after rendering of judgment for the plaintiff in such suit, to the intent he may take the same by execution for satisfying such judgment in whole or in part, so far as the value thereof can extend, if he think fit, unless the judgment be sooner or otherwise satisfied.' *N. H. Province Laws* 26.

The form of the writ of capias or attachment, enacted in 1718, commanded the sheriff to attach the goods or estate of the defendant to a certain value, and for want thereof, to take the body ; and the summons to the defendant, when goods were attached, the form of which was prescribed by the same act, gave him notice that his goods or estate were attached, 'to the value of     pounds, for *security* to satisfy the judgment' which the plaintiff might recover upon trial. *Prov. Laws* 113, 114.   The summons, in actions before justices of the peace, contained the same statement, that the goods or estate were attached for *security* to satisfy the judgment which might be recovered.   *Prov. Laws* 120.

After the adoption of the constitution, these forms were substantially reënacted, and, so far as the attachment clauses are concerned, have remained the same from 1718 to the present day.   *N. H. Laws (Ed.* 1830,) 59, 63 ; *Revised Statutes* 362.

The statute of February 9, 1791, enacted that 'all goods or estate attached to respond the judgment that may be given in any suit, shall not be released or discharged from such attachment, until the expiration of thirty days next after the rendering of such judgment on which the plaintiff may have execution, or until judgment thereon be rendered for the defendant, &c.   *N. H. Laws (Ed.* 1815,) 102.   This provision, being substantially that of the province law of 1701, was reënacted on the revision of the act in 1829.   *N. H. Laws (Ed.* 1830,) 94.

Kittredge *v*. Warren.

Another clause of the act of 1791, which was continued in that of 1829, was, that where a party died, and the cause of action survived and was prosecuted by or against the executor or administrator, the attachment made on the original writ should be and remain good, in the same manner as though the party had not died.    *N. H. Laws* (*Ed.* 1815,) 106 ; *ibid* (*Ed.* 1830,) 96.    An act of February 11, 1791, however, provided that all actions brought against an executor or administrator, before the estate was represented insolvent, should be discontinued when it was so represented, unless he consented to have a trial at law ; and on the revision of the laws respecting insolvent estates, in 1822, after making provision for the appointment of commissioners to allow claims against the estate, and for an appeal from their decision and a prosecution of the claim against the executor or administrator, it was enacted, that no ' action against any executor or administrator of any such estate, shall ever be sustained, otherwise than in this act is provided.    And if any action be commenced against the executor or administrator of such estate, it shall be discontinued when the estate is represented insolvent.'    *N. H. Laws* (*Ed.* 1830,) 364.    It has been held, when an action was commenced against the debtor, before his death, that it was to be discontinued upon a representation of insolvency in the probate court.    4 *N. H. Rep.* 385, *Clindenin* vs. *Allen.*    But it has also been held, that the circumstance that the estate was administered in the insolvent course did not directly dissolve an attachment, but that when the estate was so administered all actions were to be dismissed, and in that way the attachments made in such action were dissolved.    8 *N. H. Rep.* 462, *Edes* vs. *Durkee.*    When the creditor had obtained a judgment, and commenced his levy before the death, it was held good.    6 *N. H. Rep.* 459, *Bowman* vs. *Stark.*    But this was not because the judgment changed the nature of the attachment, or perfected it ; but because the representation of the insolvency operated to dissolve the attachment

only by a discontinuance of the suit, which, being no longer pending, could not be discontinued by the representation. The revised statutes provide that attachments shall be dissolved by the death of the defendant, in case his estate shall be decreed to be administered as an insolvent estate, but not otherwise, if the cause of action by law survives. *Rev. Stat.* 371.

By the operation of the attachment thus provided for, and regulated, if lands are attached, the debtor or other person in possession is not disturbed in his possession until the levy of the execution ; but the attachment fastens itself, as a charge or incumbrance upon the land, from the time it is made, so that any subsequent purchaser, even before a levy, can only take subject to the incumbrance of the attachment, nor can any other creditor, by a levy of an execution, avoid the operation of this charge or incumbrance. The plaintiff in the action gains a priority of right, from the date of his attachment, to have satisfaction of his claim out of the estate attached, in case he shall obtain a judgment.

In an attachment of personal estate, the sheriff, upon the service of the writ, takes the possession of the goods, and acquires thereby a special property in them, for the purpose of enforcing and protecting the attachment, and the rights of all concerned in the attachment and in the goods. He is then accountable, both to the plaintiff and to the defendant, for the disposition of them. If the plaintiff obtains a judgment, they are seized and sold upon the execution. If he fails, they are returned to the debtor. Some person may become accountable for them, and they may thus go back into the hands of the debtor, and the attachment be dissolved ; the sheriff having, by means of a receipt for them, the security of some third person, which is in that case to be made available to the creditor. But if the attachment is not dissolved, it fastens itself upon the goods, as a charge or incumbrance, like the attachment upon real estate, and the avails of them are first to be applied to the satisfaction of the judg-

ment when recovered. Subsequent attachments may be made upon them by the same sheriff, and where there are several attachments, the attaching creditors have a right to priority of satisfaction, so far as those goods are concerned, not by priority of judgment, but by that of the attachment. 1 *N. H. Rep.* 292, 294, *Poole* vs. *Symonds* ; 2 *N. H. Rep.* 142, *Bissell* vs. *Huntington* ; 5 *N. H. Rep.* 24, *Hackett* vs. *Pickering* ; 7 *N. H. Rep.* 428, *Kittredge* vs. *Bellows* ; 10 *N. H. Rep.* 238, *Clark* vs. *Morse.* Subsequent attachments may also be made of real estate, by the same or any other officer, with a like result as to priority of satisfaction. Upon the levy of the execution, the land is not sold, but the whole, or enough to satisfy the debt, as the case may be, is ' set off' to the attaching creditors, at an appraisal, in the order of their attachments, to hold as their own estate, subject to a certain redemption ; and the title relates back to the time of the attachment, avoiding all intermediate incumbrances.

Having thus provided for enabling any one who asserted a claim, arising either *ex contractu* or *ex delicto*, to take, if he pleased, at the institution of his suit, a security to satisfy the judgment which he might recover ; and to hold it for thirty days after he had obtained judgment, for the purpose of satisfying his demand out of it ; a lien by means of the judgment itself, according to the provisions of the common law, or the statute of 2 *Westminster*, 13 *Edw.* i., has never been adopted in this state. There was no necessity for it, for the law enabled the party to acquire a security upon specific property, sufficient to satisfy the debt, if the defendant had so much, at a much earlier stage of the proceedings. This was an ample substitute for the other, (it has sometimes been thought too ample,) and by reason of its very strong analogy and resemblance, it has, like the security derived from a judgment in some other of the United States and in England, been denominated a ' *lien.*' Thus the statute of July 3, 1822, after providing that rights in equity of redeeming real estate mortgaged, may be attached on mesne process,

enacts that when any such right shall be so attached, and pending the attachment, the estate shall be redeemed by the mortgagor, 'the attaching creditor shall have the same *lien* on such estate as though the attachment had been of the fee, and execution may be levied thereon accordingly.' *N. H. Laws (Ed.* 1830,) 106. And the statute of December 9, 1842, enacts 'that when the levy of any execution shall be stayed by injunction, the *lien* and interest of the attaching creditor shall continue and remain in full force until the expiration of thirty days after the dissolution of such injunction.' *N. H. Laws, Nov. Session,* 1842, *ch.* 2. This last statute, having been passed since the passage of the bankrupt law, is merely referred to, in connection with the former one, to show that attachments have been regarded as liens, by the legislature. There is no room for any surmise, that the expression cited was used with any reference to the bankrupt act. Attachments were repeatedly denominated liens in the opinions delivered by different members of this court, long before the passage of the act. 2 *N. H. Rep.* 138, *Howard* vs. *Daniels ;* 5 *N. H. Rep.* 528, *Dunklee* vs. *Fales ;* 7 *N. H. Rep.* 427, *Kittredge* vs. *Bellows ;* 10 *N. H. Rep.* 238, *Clark* vs. *Morse.* So it has been said that the service of the process of foreign attachment, upon the trustee, creates a lien, in favor of the plaintiff, upon the debt or property in the hands of the trustee. 5 *N. H. Rep.* 568, *Burnham* vs. *Folsom.*

From the great similarity in the operation of the security by attachment, to that of a lien by judgment, in governments where that description of lien is enforced, as well as from the statute of 1822, we are satisfied with the use of the term '*lien,*' to describe the particular security which a plaintiff obtains by an attachment, on the service of his writ. If any thing further were necessary to show the propriety of this use of the term 'lien,' it might be found in the fact that the same use prevails in other states, and that Mr. Justice *Story* recognizes it in his treatise on Bailments, where, in speaking

of the attachments of some of the New-England states, particularly of those of Massachusetts, New-Hampshire and Maine, he says, ' But subject to the lien of the attachment, he' (the debtor) 'retains the right to the property, and may alienate the same.' *Story on Bailments,* (1 *Ed.*) *ch.* 2, § 135.

It is true that the plaintiff, in such case, gains, by his attachment, neither a right of property, nor possession of it. 8 *N. H. Rep.* 425, *Dodge* vs. *Griswold;* 9 *N. H. Rep.* 488, *Goddard* vs. *Perkins.* In relation to the first of these cases, however, it may be proper for me to say, that I have never concurred in some of the views incidentally taken in the opinion, although the result has my full approbation. I have never been able to discover how the default gave the plaintiffs any greater title to maintain their bill, than they would have had without it. If there had been any controversy about the justice of the demand, for the security of which the attachment had been made, that might have furnished a good reason for delaying proceedings in the bill in chancery, until that matter was determined. The legal right to come into chancery, to have the alleged fraudulent conveyance removed out of the way of a levy of the execution, depended upon the attachment; and the default, in the original action, did not give any validity to the attachment. It existed before the default, as perfect as it did afterwards. The creditors could not levy without a judgment. It was not held necessary that they should enter up judgment, to maintain the bill in equity. If it had been so, the bill would have been useless for their purpose, as the attachment upon which they relied would have been dissolved at the expiration of thirty days after the judgment, and their object was to clear the way for a levy of the execution, or to secure a release immediately upon its being made. Nor, as it seems to me, is there any similitude, upon which it can be said that a claim upon land, by attachment, ' is very little better than the expectation of an heir, or a legatee, in the lifetime of the an-

cestor or testator.' The expectancy of an heir at law is said to be 'less than a possibility.' 5 *Law Reporter* 354.

But notwithstanding the plaintiff, by the attachment, obtains neither a right of property or possession, the sheriff, in making an attachment of personal property, acquires both, to be used, if necessary, in behalf of, and for the benefit of the plaintiff. Thus the sheriff may maintain trespass and trover for the goods. 2 *N. H. Rep.* 67, *Odiorne* vs. *Colley; ibid* 135, *Sinclair* vs. *Tarbox.* And his right to maintain actions founded upon the attachment, and supported by it, is as great before judgment as after it. That the attachment is something more than a mere expectancy, even before judgment, is shown also by the fact, that where the property attached is liable to perish, waste, or greatly depreciate in value, or where it cannot be kept without great expense, the sheriff, upon the application of the plaintiff, may, after an appraisal, sell the property, and give a good title to it, without the consent of the defendant, unless security is given for the appraised value. 2 *N. H. Laws* 146 ; 2 *N. H. Rep.* 92, *Cilley* vs. *Jenness.* That the plaintiff and the officer gain no right of property or possession, in attachments of real estate, certainly cannot tend to prove that there is no lien by the attachment, for a lien by judgment, where that is recognized, gives neither, until a levy of the execution. The plaintiff, by his attachment, gains the right to have that particular estate applied to the payment of his debt. He gains it at an earlier period than a lien is gained in England by means of a judgment ; and it may not be available to him if he does not obtain a judgment; or he may lose it at an earlier period after obtaining one, if he does not proceed to levy. But these circumstances do not change the nature of the security. In attachments of both real and personal estate, the plaintiff gains such a right to have the property applied to the satisfaction of his demand, that a plaintiff who has made a subsequent attachment is permitted, by our practice, to come into court and defend an action upon which a

prior attachment has been made, in the name of the defendant, for the purpose of protecting his interest. 4 *N. H.'Rep.* 319, *Buckman* vs. *Buckman.* And a release of an attachment is a good consideration for a promissory note. 5 *N. H. Rep.* 19, *Hackett* vs. *Pickering.*

With all these considerations pressing upon our attention, we can have no hesitation in declaring that an attachment on mesne process, in this state, even before judgment, or default, is a lien, or security on property, valid by the laws of the state; the more especially, as the statutes of the state have denominated it the first for more than twenty years, and those of the state and of the province, have characterized it as the latter for a period considerably exceeding a century. Upon an attachment of goods they are in the custody of the law, for the very purpose of enforcing this lien or security.

The next question is, whether this lien or security is within the proviso of the second section of the bankrupt act?

The first answer to this question is, that our conclusion, just expressed, shows it to be within the very terms of it; and there seems to be nothing in the considerations as yet adverted to, having a tendency to show that it is not within its meaning and spirit. The examination thus far would seem to bring it within both.

But our attention is here called to the case, *Ex parte Foster,* 5 *Law Reporter* 55, cited for the defendant. It has been supposed that by the decision in that case, it was held that the plaintiff in the suit in which the property was attached before the petition, had not obtained such a lien as it was the intention of the bankrupt act to protect. 5 *Law Reporter* 368; *in the matter of Allen and others.* But I do not understand the decision in *Foster's case* to have gone to that extent. That question seems to have been expressly and distinctly waived by the learned judge who pronounced the decision, for he says: 'I do not propose to rest my present judgment upon any construction of the words,' [of the

proviso,] 'limiting them, so as to include inchoate, conditional liens, arising, not under contract, but under remedial mesne process. Assuming such liens to be within the protection of the proviso, (which is an admission which I make merely for the sake of argument, and I am by no means satisfied that it is a correct exposition of the words or intent thereof,) still there remains,' &c. The point of the decision in that case was merely that the attaching creditor should be restrained, by injunction, from proceeding to obtain a judgment. This seems to have been on the ground that he had, at most, a conditional or inchoate lien or security ; that all property and rights of property were divested out of the bankrupt, who was to be treated as if he were *civiliter mortuus ;* that pending the proceedings in bankruptcy, before or after the decree, the attaching creditor could not be permitted to proceed to trial and judgment, when there could be no party properly before the court to appear and make defence ; that if the attaching creditor had knowledge of the facts, it would be a fraud upon the bankrupt act for him to proceed and get a judgment before an assignee was appointed, or in a situation to appear and defend the suit ; that the court where the process was pending could not properly proceed in the cause until it had been ascertained whether the bankrupt was entitled to, and had received his discharge or not ; that if the attaching creditor should forthwith proceed to judgment, without waiting for the time when such discharge might be obtained and pleaded in bar of farther proceedings in the suit, and should obtain satisfaction of his judgment, that judgment must be treated as a fraud upon the bankrupt act, and as intended to defeat the just rights of the other creditors of the bankrupt, and that the creditor could not be entitled to hold the money ; it being assumed that the discharge in bankruptcy, when obtained, might be pleaded in bar of the action.

The point of the decision itself, that the plaintiff should be restrained, has no bearing upon the present case. If there

had been any doubt respecting the justice of the demand, we should probably concur in regarding an injunction as a proper proceeding, until provision could be made for defending the suit.

But it is undoubtedly true that much of the reasoning in that case would tend to support the view taken of it in *Allen's case*, before referred to. Assuming the attachment to be a lien, conditional or otherwise, within the saving of the proviso, it is not readily perceived why the creditor ought to be restrained until a discharge was procured, if one should be obtained, because that discharge might be pleaded in bar of the action, and the attachment thereby defeated; nor, upon the same assumption, is it very clear how it would be a fraud upon the bankrupt act, or defeat the just rights of the other creditors, for the plaintiff to proceed to judgment, if there was no dispute that he had a just debt. For the party who had a just claim, against which no allegation was made, and a security for its satisfaction recognized by law, and specially exempted from the operation of the bankrupt act, to proceed to judgment upon his claim, by a default, with a view of appropriating his security, could hardly be a fraud upon the act which specially saved his security to him.

The decision in that case involves only the consideration of the attachment laws of Massachusetts, but it is not to be denied that those laws, in their general features, are similar to the attachment laws of this state, and probably to those of all the New-England states, except Rhode-Island. Perhaps an attachment may not be denominated a *lien* in the statutes of Massachusetts, but it is repeatedly so called in the opinions of its supreme court. And it would seem, furthermore, from the citations of Mr. *Rand*, in his very able and learned argument in that case, that the principle involved is applicable, in a greater or less degree, to attachment laws in almost, if not quite all the states in the Union. And it may here be remarked, that the application of the term lien, not only to the attachments of the New-England states, but to

attachments in other states, (similar in principle, although of a more limited character,) as shown in that argument, would seem to have been so extensive, that this particular application of it could hardly have been overlooked in framing the proviso of the second section. This, however, is not essential to the decision of the question.

From the almost entire similarity of our process of attachment with that of Massachusetts, we are not at liberty to pass by that case; and it is matter of great regret that we cannot concur in the views of the very learned judge who delivered the opinion.

So far as it relates to the question whether an attachment is a lien or security, it is not necessary to add any thing to what has been already said upon that subject. If this lien or security were contingent or conditional, it is not perceived why that should take it out of the express language of the proviso, which includes all liens and securities, valid by the laws of the state. The fact that it is dependent upon, and may be defeated by a contingency, does not make it any the less a lien or security, so long as it exists. But the existence of the lien or security is, in our view, in no way contingent, conditional, or inchoate. Its existence does not depend upon the judgment. It exists, in its full force, from the moment the attachment is made; as much so as a lien by judgment, upon the rendition of the judgment, in the states where that security is recognized. As we have already seen, it fastens itself upon, and binds the property at once, giving priority of right, and in the case of personal property, authorizing the sheriff, for the benefit of the creditor, to hold the possession, to maintain actions, and in some cases even to sell and dispose of the property itself, before either a default or judgment. It is originated by the suit, and sustained by the suit, but is not part of it. It can only be made available through a judgment, but the judgment neither changes its nature, nor determines its validity; nor does it operate to perfect the attachment. The judgment establishes the ex-

istence of the demand upon which the attachment is predicated, and the security taken; whereas it was before only alleged, and presupposed, for the purpose of the security. The security is not inchoate, but it is conditional in the sense that liens by judgment are conditional. It depends upon contingencies whether it will ever be made available to the creditor, and so it is with liens by judgment, where there is a period when they cease to exist, if the judgment creditor has not proceeded to seize the property. The continuance of a lien by attachment depends upon one contingency beyond liens by judgment, which is, that the plaintiff sustains his suit; but the fact that the law authorizes it to be fastened upon the property, *in invitum*, before the existence of the demand is admitted, or ascertained, and that it may be defeated and dissolved if it shall appear that the plaintiff has no claim, neither disproves its existence as a security before the demand is ascertained, nor shows that it did not confer vested rights from the moment it was taken. A pledge to secure all demands which may be due from the pawner to the pawnee, is not the less a pledge, or the lien less perfect, because it may appear, upon an accounting, that nothing is in fact due. And an accounting, by which the pawner is found indebted in a certain sum, has no operation to perfect the pledge, although it ascertains the amount for which it stands as a security. Nor does the expiration of the day of payment, by which the pawnee obtains a right to sell the pledge and apply the proceeds in satisfaction of his demand, perfect the security, although it gives an absolute right to sell the pledge, which did not exist before.

Whether any lien will be available to the party entitled to it, is usually a contingent matter, dependent upon his pursuing the regular steps to enforce it.

We cannot restrict the signification and meaning of the term 'liens,' or the term 'securities,' by any argument drawn from the company in which they are found. The maxim, *noscitur a sociis,* cannot be applied here with that purpose,

for much of the argument which must be founded upon it would restrict 'liens' to such as arise from contract alone, resting on possession. But this would prove quite too much, it being clear and well settled that this term has here a much broader meaning. And if these terms are applicable to securities obtained by the creditor through judicial or legal process, the course of argument that makes a subdivision in securities of that character, excluding those dependent upon remedial mesne process, seems to find nothing in their company upon which to base an exclusion of that description.

Nor can the provision in the third section, that from the time of the decree in bankruptcy, all the property and rights of property of the bankrupt shall be deemed divested out of such bankrupt, and vested by force of the decree in the assignee, affect this question. It of course could not have been intended that this clause should defeat or impair any rights saved from the operation of the act, by the proviso of the second section ; nor does the language admit of such a construction. The property and rights of property are vested in the assignee ; but he takes them as the bankrupt held them, subject to all the liens, mortgages, securities and incumbrances, of every description, saved by the proviso. 5 *Law Reporter* 358, *Parker and Blanchard* vs. *Muggridge ;* 6 *Law Reporter* 352, *Mitchell* vs. *Winslow.* When the decree in bankruptcy is passed, it may relate back to the date of the petition, and the rights and titles of the bankrupt vest in the assignee, by the relation, from that period ; but this relation does not extend still farther back, and avoid a security *bona fide* acquired before the petition, and saved by the proviso ; and the question still remains, what is thus saved ?

Nor can the interpretation of these terms be deduced, in any degree, from the fifth section of the act, providing for an equal distribution of the bankrupt's property and effects, except only for debts due to the United States, and those arising from such debts. By that section, if a creditor comes in and proves his claim, he waives all right of action and suit,

and surrenders all proceedings commenced and all judgments obtained. He may thus lose a lien. But the provision, that all the property and effects of the bankrupt shall be equally distributed, cannot limit the savings made by the act itself.

If it was resorted to for that purpose, there seems to be no place to stop until the whole proviso is destroyed. The policy of the act is an equal distribution of all that by force of the act comes to the hands of the assignee, among all who come in and prove their claims. But that there is another policy of the act besides this, is apparent from the proviso itself. Its policy is not to interfere with liens, mortgages, and securities, *bona fide* acquired before a petition or act of bankruptcy, and valid by the laws of the several states, so long as the creditor holding them does not ask a dividend out of the other property. Its actual policy, therefore, in this particular, cannot be determined by its policy in relation to those who prove their claims under the bankruptcy, and by an inquiry how far the savings may be restricted in their favor, without doing violence to the language of the proviso. When we have ascertained the meaning of the proviso, we shall know the policy of the act. We cannot, therefore, reason from its policy, to give a construction to the proviso. To restrict the general signification of its terms, because the policy of the act is to distribute the property and effects which do not fall within it, *pro rata*, among the creditors who come in and prove their debts, would be to condemn the policy which inserted the proviso itself, and to narrow it, by construction, because it ought not to have been there.

Nor will it do for us to reason, that a security by attachment is not within the proviso, because, if the bankrupt obtains his discharge, he may, by force of the fourth section, plead it in bar of the action, and thus defeat the security. That would be to assume a construction of the fourth section, and upon that construction to found a limitation upon the language of the proviso, when, in fact, the true construction of the fourth section may, in this particular, be depend-

ent upon the construction first to be given to the proviso it-self. It is true, that the language of the fourth section is in very general terms. The bankrupt who has surrendered his property, and conformed to the requisitions of the act, is entitled to a full discharge from all his debts, to be decreed and allowed by the court. And the certificate, when duly granted, is, in all courts of justice, to be deemed a full and complete discharge of all debts, contracts, and other engagements, provable under the act—may be pleaded as a full and complete bar to all suits—and shall be conclusive evidence, of itself, in favor of the bankrupt, unless impeached for fraud, or wilful concealment of his property, &c. But, notwithstanding the language of this section is thus broad, standing by itself, it must be construed, like the proviso, with reference to other parts of the act. If it shall appear, upon examination, that there are, and must be exceptions in this particular—cases in which the certificate, from the very terms and spirit of the act, cannot be a bar to legal proceedings ; cases in which it will not be a bar to the maintenance of actions for the recovery of debts—then the case of a lien, or security, by attachment on mesne process, may form one of those very exceptions; and thus the broad language of that section, relative to a discharge, prove nothing whatever in relation to the effect to be given to the proviso. That there are, and must be exceptions of this character, will be manifest when we come to that part of the case.

The subsequent case of *Cook*, 5 *Law Reporter* 443, seems to us fully to settle, that an attachment upon mesne process is a lien or security, within the saving of the proviso. It was there held that the creditors, having attached property and obtained judgment before the petition in bankruptcy, had a perfect right, *under the attachment*, notwithstanding no levy of execution had been made, and, so far as appears, no execution issued at the date of the petition. It was said, that the creditors had made their right or lien perfect by the judgment ; that it was no longer a contingent or conditional

tight; but it had attached absolutely to the property, and remained a fixed and positive lien for thirty days after the judgment, by means of which the creditors, at their election, might obtain a preference of satisfaction, out of the property attached, over the other creditors. But we are clearly of opinion, that by our laws, where an attachment has been duly made upon mesne process, a judgment for the plaintiff has no effect upon the security or lien obtained by the attachment, farther than this; it is one step to enable the plaintiff to avail himself of the security, for the satisfaction of his debt, and will operate to dissolve the attachment, if a levy of the execution is not made within the thirty days. It is not necessary to recapitulate what we have already said upon this point. The attachment, or lien, or security, is not constituted by the judgment; its validity is not dependent upon the judgment; it is not perfected by the judgment; nor is it enlarged or changed by the judgment. But it is, before judgment, a fixed and positive security for what may be recovered, by means of which the plaintiff, at his election, may hold the property, and obtain a preference of satisfaction, provided he obtain a judgment, and provided he proceed to levy his execution within the limited time, and provided he complete the levy according to law. This seems to be perfectly clear from the fact, that the officer who has attached personal property, has as perfect a right to hold the property, and to maintain any actions founded upon the attachment, before judgment, as he has afterwards. And the right to a preference of satisfaction depends upon the attachment, and not upon the judgment.

In our view, then, attachments, even before judgment, must stand upon the same ground, in this respect, as judgments in other states, where they operate as liens; and such judgments were held to be liens, within the saving of the 63d section of the bankrupt law of 1800. 2 *Caines' R.* 300, *Livingston* vs. *Livingston.* And they are admitted to be liens, within the proviso of the present act. 5 *Law Reporter* 446, *Matter of Cook.*

Our opinion upon this part of the case, however, is not left to rest upon our own reasoning alone. The laws of Vermont, upon the subject of attachments, so far as this discussion is concerned, are understood to have quite as great a resemblance to those of this state as the laws of Massachusetts; and the courts of the United States, in that district, have directly settled that an attachment is, of itself, without regard to the recovery of the judgment, a lien, within the saving of the proviso. Mr. Justice *Prentiss* so held in the district court. *Downer* vs. *Brackett,* 5 *Law Reporter* 392; *Matter of Rowell,* 6 *Law Reporter* 300. And Mr. Justice *Thompson,* of the supreme court of the United States, (whose recent decease is so deeply to be deplored,) made a similar decision, in *Haughton* vs. *Eustis,* 5 *Law Reporter* 505. We may be in an error in this matter, but if it shall prove so, we shall have the consolation of knowing that it is one which has been shared with those distinguished jurists; and furthermore, it can be prevented from working ultimate injustice, by the revision of the supreme court of the United States.

But another question remains, and that is, whether the certificate of discharge which the defendant has now obtained and pleaded, is a bar to the farther maintenance of the action, and whether the attachment is not thereby defeated?

We have already referred to the broad terms of the fourth section of the act, by which the discharge and certificate, when duly granted, shall, in all courts of justice, be deemed a full and complete discharge of all debts, contracts, and other engagements of the bankrupt, which are provable under the act, and shall and may be pleaded as a full and complete bar to all suits brought in any court of judicature whatever. No allegation has been made that the plaintiff's demand might not have been proved under the bankruptcy. He seems to have omitted to prove it, for the purpose of availing himself of his security. Were it not for

the attachment, the discharge would furnish a good bar to the action. But if the attachment is saved by the act, the certificate obtained under the act ought not to destroy the attachment, unless that result is produced by some laches of the creditor or by some insuperable obstacle in the case. There is nothing to show any laches in the plaintiff. If, like others, he has been restrained by injunction from proceeding, or if the defendant asked and obtained a continuance, the plaintiff is in no fault. Nor is there any obstacle whatever in the way of securing to the plaintiff any thing which the act saves to him. A special execution, confining the remedy to the property, may be issued. 6 *N. H. Rep.* 51, *Chickering* vs. *Greenleaf.*

It is perfectly clear that there must be exceptions to the language of the fourth section ; cases where the debt, which was provable under the act, and not proved, must be holden to subsist, notwithstanding the certificate of discharge. Thus mortgages are saved by the proviso, and notwithstanding the certificate of discharge, the debt upon which a mortgage is predicated must be holden to subsist, so far as it is necessary to sustain any legal proceedings for the foreclosure of the mortgage. Under our statutes, a conditional judgment must be entered, that if the amount of the debt is paid within two months, the judgment shall be void, otherwise a writ of possession shall issue. But, if the debt was fully and completely discharged, there would be a good defence to the mortgage, which is the incident to the debt. So in the case of a lien by pledge. The discharge would be no bar to proceedings in equity for the sale of the pledge, in order to apply the proceeds in satisfaction of the debt. And so in cases where attachments have been made, and judgments obtained, before petition ; as in *Cook's case,* where it is admitted that the lien is saved. The debt subsists, notwithstanding the discharge, so far as to uphold the attachment, and execution, and the right to sell the property upon it. And this is not because there is no opportunity to plead

the discharge, after judgment ; for if the discharge operated to defeat the debt, the judgment creditor, to whom nothing would then be due, might be, and ought to be restrained by injunction from selling the property attached.

The proviso, in saving liens, mortgages, and other securities, saves, as an incident, the means of making them effectual and available. This is a common principle in cases of grants. Where any thing is granted, whatever is essential to the enjoyment of it passes as an incident. And so of things reserved. 10 *N. H. Rep.* 313, *Cocheco Manf. Co.* vs. *Whittier, and auth. cited.* The principle is as sound when applied to the reservations and savings in a statute. Whatever is necessary to make the savings of the proviso effectual, is reserved from the operation of the act, and such cases form exceptions to the matter of the fourth section, so far as is necessary for that purpose. It is only by thus construing the different parts of the act together, and making exceptions where exceptions are necessary, that it is made to form a consistent whole.

Another exception to that part of the fourth section, which makes the discharge and certificate a complete bar to all debts which were provable under the act, is found in the case of fiduciary debts, under the construction given to the act in the *Matter of Tebbets*, 5 *Law Reporter* 265–267. It is there held that such debts are provable under the proceedings in bankruptcy, equally with other debts, at the creditor's election. If the fiduciary creditor elects to come in and prove his debt, and to take a dividend, he is barred of all other remedy therefor, except out of the assets. If the creditor do not prove his debt, it is not extinguished by the discharge and certificate. But in granting the certificate no exception is to be made of such debts, ' for if they are by implication excepted from the operation of the act, where the fiduciary creditor does not elect to come in and prove his debt, and take a dividend under the proceedings, it is plain that the terms of the discharge and certificate cannot

control his rights; and that his debt will not be barred or extinguished thereby; but he may, if the discharge and certificate are pleaded to any suit for his debt, reply the fact that it is a fiduciary debt.' 5 *Law Reporter* 267. Having settled that an attachment is a lien, or security, saved by the act, the clause just cited covers the whole ground. The certificate being pleaded, the plaintiff may well, as he has done, reply the fact that there is an attachment, saved from the operation of the act, and pray such a judgment as will enable him to avail himself of what is thus saved to him. It was early seen and stated, that such might be the construction of this part of the act. 4 *Law Reporter* 405.

Under the bankrupt act of 1800, it being held that an attachment, under the laws of Connecticut, made before the passage of the act, created a lien within the saving of the act; it was also held by the superior court, and the court of errors, that the certificate was not a bar to the suit, but that execution should issue only against the property attached. 1 *Day* 117, *Ingraham* vs. *Phillips.*

And upon this part of the present case, also, our opinion is in concurrence with that of Mr. Justice *Prentiss,* distinctly expressed in the *Matter of Rowell,* 6 *Law Reporter* 300. See, also, 5 *Law Reporter* 400.

The repeal of the bankrupt law renders any opinion respecting its construction comparatively of minor importance, and it could hardly have been deemed necessary to set forth our views upon the subject matter of this case so much at large, were it not for the conflicting opinions already adverted to in the courts of the United States, and for the fact that many other cases, it is understood, are still upon our dockets, dependent upon the principles which govern this case.

We have only to remark, farther, in conclusion, that we have been strongly impressed from the first with the views now expressed; and the extended examination we have made has left no reasonable doubt upon our minds respecting the result. A special judgment must be entered for the

plaintiff, in the Common Pleas, and execution be issued against the property attached, in accordance with this opin ion.